### Nolan Stewart, Executor, *v.* Caldwell & Hickey.

A commercial firm in New Orleans, styled "*Caldwell & Hickey*" and composed of *John Caldwell* and *Daniel Hickey*, was dissolved in 1841, when the partners removed to Baton Rouge, where they afterwards resided. They established a planting partnership in East Baton Rouge, under the same name, "*Caldwell & Hickey*." In 1848 *Caldwell* obtained an advance from a factor, which enured to the benefit of the planting partnership, and gave a note signed "*Caldwell & Hickey*," with *McCalop* as surety. *Stewart*, the executor of *McCalop*, who, as surety, had paid the note, sued *Caldwell & Hickey* as commercial partners. There had been no published notice of the dissolution of the New Orleans partnership, but its members had wholly withdrawn from mercantile business and never used the old mercantile name, as such, subsequently to its dissolution. *McCalop*, who resided in West Baton Rouge, not far from the residence and planting establishment of the defendants, never dealt with the New Orleans firm, or looked to it with any view of responsibility; therefore *held* : That *Hickey* was only liable, as an ordinary partner, for one-half of the amount.

If one of the members of an ordinary partnership, without authority, sign the partnership name to a note, the partner, who has knowledge of its existence, and does not object, and to whose benefit the consideration for which it was given enures, is jointly bound, but where the partner signing the firm name had no authority to give the note, the copartner who had no knowledge of its existence, and neither ratified nor received any benefit from it, is not bound.

An instrument in this form: "We jointly and severally promise," and bearing the signatures of "*Caldwell & Hickey*," an ordinary partnership, and of "*James McCalop*," exhibits on its face two debtors in solido, to wit: one solidary debtor, the firm of *Caldwell & Hickey*, and another solidary debtor, *James McCalop*.

C. C., 2696, 2697, 2843, 3023.

APPEAL from the Sixth District Court of the parish of East Baton Rouge, *Burk*, J. *George Eustis* and *R. H. Marr*, for plaintiff. *T. G. & P. H. Morgan*, for defendants and appellants.

SLIDELL, C. J. This appeal is taken by the defendant, *Daniel Hickey*, from a judgment in which he has been condemned to pay the whole amount of two notes, one for $2,500 and the other for $550, to the plaintiff, who is the executor of *James McCalop*.

54

The notes are signed thus: "*Caldwell & Hickey*." One is dated in December, 1848, and the other in February, 1849. Both were protested for non-payment, and were taken up by *McCalop*, who was the surety in the former note, and the endorser of the other.

It was *Caldwell*, who wrote the signatures of these notes. The ground upon which *Hickey* was held liable for the whole of the notes, was, that he was considered by the court below liable as a commercial partner.

We are unable to concur in the opinion of the District Judge that *Hickey* is liable as a commercial partner.

*Caldwell & Hickey* had been commercial partners in New Orleans, under the partnership style of "*Caldwell & Hickey*;" but that firm ceased to exist in 1841, when the partners removed to Baton Rouge, where they afterwards resided. They had established a plantation in East Baton Rouge, and their planting partnership was carried on under the same name, *Caldwell & Hickey*. There does not appear to have been any published notice of the dissolution of the New Orleans partnership; but it is clear that they withdrew wholly from mercantile business, and there is no evidence of the use of the old mercantile name, as such, subsequent to the breaking up of the firm in New Orleans. Nor is it in evidence that *McCalop* ever dealt with the New Orleans firm, or looked to it with any view of responsibility on these notes. His residence was in West Baton Rouge, not far from the residence and planting establishment of the defendants.

We are of opinion that *Hickey* is liable for one-half of the amount of the note of $2,500, as an ordinary partner of the planting firm of *Caldwell & Hickey*. It is true no express authority is shown to have been given by him to *Caldwell* to bind the firm in the form of a promissory note, but we hold him liable by reason of the consideration for which the note was given, his knowledge of its existence without objection, and its having enured to his benefit as partner. The facts proved are these: *Kelly & Conyngham*, a commercial house in New Orleans, the payees of the note, were factors of the plantation, keeping their account in the name of the planting firm, *Caldwell & Hickey*. It was given to them by *Caldwell* to obtain an advance to the firm on their crop, and was charged in an account rendered by the factors, of which a copy was transmitted to *Hickey*, who did not make objection, and who, we may reasonably infer from the whole evidence, was not ignorant of its having been drawn and used for the purpose above mentioned, and tacitly assented to the transaction.

It has, however, been contended by the counsel for the plaintiff, that they are entitled to hold the defendant, *Hickey*, liable *in solido* (although the firm of *Caldwell & Hickey* was a planting, not a commercial partnership) by reason of the language of the contract, and the circumstances under which it was given. The note is in these words:

$2,500.                                          LOUISIANA, December 30, 1848.

Twelve months after date, we, jointly and severally, promise to pay to *Kelly & Conyngham*, or order, at their counting-house, in New Orleans, twenty-five hundred dollars, for value received, to bear interest at eight per cent. per annum from maturity, if not paid.

CALDWELL & HICKEY.

JAMES McCALOP.

The circumstances under which it was given are thus detailed by *Conyngham*, of the house of *Kelly & Conyngham*: "The note was given for an advance

upon the crop, and an agreement with *Caldwell & Hickey* that if they would give *James McCalop* as security, we would give them the advance. The note was cashed by us for the benefit of *Caldwell & Hickey.*" ·Again he says: "I have been their merchant for the transaction of plantation business, but I know of no other business of a different nature, in New Orleans, of theirs." The balance of $1527 92, charged February 19, 1849, was made on plantation business of *Caldwell & Hickey.* "The note was given for an advance on the crop of *Caldwell & Hickey.*" The account annexed to the testimony of this witness is headed "*Caldwell & Hickey's* account with *Kelly & Conyngham.*" There is no evidence of what passed between *McCalop* and *Caldwell* or *Hickey* at the time *McCalop* signed the note, nor of anything having been said or done at the time, between *McCalop* and *Kelly & Conyngham*, save what appears on the face of this note.

Now, looking to the face of this note, we do not give the words, "we jointly and severally promise," the meaning claimed by the plaintiff's counsel. It is said for the plaintiff that they point to the solidary liability of *Caldwell* and *Hickey*, and are meaningless unless so understood, because *McCalop's* obligation to pay the whole debt resulted by operation of law from the fact of his being surety.

We think the instrument exhibits on its face two debtors *in solido*, to wit: one solidary debtor, the firm of *Caldwell & Hickey*, and another solidary debtor, *James McCalop*.

It is not admissible to say that unless understood in the sense claimed by the plaintiff the words are meaningless because *McCalop's* obligation to pay the whole debt resulted by operation of law from the fact of his being surety. The answer is that these words do affect materially the obligation of the surety to the payees; for the surety who binds himself *in solido* with the principal debtor renounces the plea of discussion; and " the effects of his engagement," says the Code, " are to be regulated by the same principles which have been established for debtors *in solido.*" Art. 3014. Troplong, cautionment, No. 239.

It is true, as argued for the plaintiff, that the contract of suretyship implies a mandate, and that Art. 2995 declares that "if the attorney has been empowered by several persons for an affair common to them, every one of those persons shall be bound jointly and severally (*in solido*) to him for all the effects of the procuration." But of whom was *McCalop* the mandatary? Not of two individuals, *John Caldwell* and *Daniel Hickey*, but of the firm, *Caldwell & Hickey*. He is authorized by the firm to pay the debt for it, and his recourse for indemnity is to the firm. That firm being, under our law, an "ordinary particular partnership," its members are not bound *in solido*. Civil Code, 2696, 2697, 2843, &c., *Parker* v. *Brashear*, 16 La. 69. Let it be observed there is no evidence, direct or circumstantial, that *McCalop* acted otherwise than at the solicitation of the firm, or that *Kelly & Conyngham*, in this transaction, dealt otherwise than with the firm. *Conyngham* speaks throughout his depositions of the advance and the note as the affair of the firm, *Caldwell & Hickey*. Considering the transaction in this light, our conclusion in no wise conflicts with the doctrine of suretyship, as expounded by the commentators, and embodied in our Code.

It is obvious also that, under his subrogation, *McCalop* acquired no right against *Hickey* as a solidary debtor. If *Kelly & Conyngham* had sued *Hickey* they could only have held him liable as member of an ordinary partnership, of the planting partnership of *Caldwell & Hickey* with which they dealt.

STEWART
v.
CALDWELL AND
HICKEY.

We waive the consideration of the question whether the English text of Art. 3023, which is a literal copy of an article in the Code of 1808, is to control the French text, which is a literal copy in both Codes of an article of the Napoleon Code. We deem it sufficient to say that this is not according to the terms of the contract, a case of "several principal joint debtors, for the same debt." It is the case of one principal debtor, the firm of *Caldwell & Hickey*, in whose name the note is signed. *McCalop* was the surety of that firm.

Respecting the other note of $550, we find no sufficient reason to hold the defendant liable for it at all. As we have already said, the commercial partnership had ceased. The planting partnership did not involve an authority to the partners to bind each other in this form ; it is not satisfactorily proved that *Caldwell* had authority to bind *Hickey ;* nor is it proved, as in the case of the other note, that *Hickey* knew of its existence and impliedly ratified it, nor that its proceeds enured to his benefit. See *Benton* v. *Roberts*, 4 An., 216.

It is therefore decreed that the judgment of the District Court be reversed ; and it is further decreed that the plaintiff, *Alfred A. Williams*, now the dative executor of *McCalop's* estate, [said *Williams* having succeeded *Nolan Stewart*, deceased] recover of the defendant, *Daniel Hickey*, the sum of twelve hundred and fifty dollars, with interest at the rate of eight per cent. per annum, from the eleventh of January, eighteen hundred and fifty, until paid, and costs of suit in the court below ; those of the appeal to be paid by the plaintiffs ; and it is further ordered and decreed that upon the claim which is founded upon the note of five hundred and fifty dollars there be judgment in favor of the defendant.