Statement of the Case.
MONROE, J.
This is an action in damages against Charles F. Cullom & Co., and Charles F. Cullom and George K. Pratt, as members of that firm, predicated upon the *784 following contract and correspondence, to wit:
“No. 415 Carondelet St., New Orleans, La., Sept. 27, 1899. The following contract is this day entered into between Irwin Jami-son and Charles F. Cullom & Co. All sand to be used by Chas. F. Cullom & Co., on their contract with the Drainage Commission, delivered on the New Basin in such places as may be desired, at the rate of ninety-five cents per cubic yard, on barges, the barges to be unloaded within twenty-four hours after landing, and should two barges be unloaded at the same time, the second barge to be unloaded in forty-eight hours. It is agreed that should strikes or accidents affect either party, they shall not be held liable under this agreement, and it is further agreed that all material delivered during the month shall be paid for during the following month. The barges of sand to be delivered, as ordered by Charles F. Cullom & Co. [Signed] Charles F. Cullom & Co. Irwin Jamison. Witnesses: [Signed] J. R. Flood, E. W. Fisher.”
“Charles F. Cullom & Co., General Contractors, 320 Carondelet street, New Orleans, Oct. 10, 1S99. Irwin Jamison, Esq., City-Dear Sir: I return you herewith contract for sand, signed by Mr. Cullom. This was done under a misapprehension, as I was negotiating with Mr. Jahncke at the time, and had closed with him. Respfy., [signed] G. K. Pratt, Dr.”
“October 10, 9. Dr. Geo. K. Pratt, City-Dear Sir: Tour favor of this date is just received, saying that you returned me my contract with Messrs. Chas. F. Cullom & Co., but there was no enclosure in your letter.
“I beg to say that I made the contract on the 27th ult, with Chas. F. Cullom & Co., Chas. F. Cullom signing for the company. The morning I met you on the work, Mr. Cullom incidentally mentioned to you, in my presence, the price at which he had bought the sand for me. A contract once closed eanno't be cancelled without the consent of both parties, and I stand ready to fulfill my part of the contract. Yours respectfully, [signed] Irwin Jamison.”
“New Orleans, La., October 10th, 1899. Messrs. Chas. F. Cullom & Co., City — Dear Sirs: Referring to the within copy of a letter this day received from Dr. Geo. K. Pratt, I beg to say that if this is to be taken as an indication of your willingness to escape your obligation under the contract entered into between us on the 27th day of September, 1899, it will surprise me very much. The contract above mentioned, referred to by Dr. Pratt, was entered into in good faith, and as I am, and stand, ready to carry out my obligations thereunder, I shall most certainly hold you to yours, and so notify you. Yours truly, [signed] Irwin Jamison.”
“Chas. F. Cullom & Co., General Contractors. 320 Carondelet Street, New- Orleans, La., Oct. 14, 1899. Mr. Irwin Jamison, City —Dear Sir: We have your letter of the 11th inst. [referring to the preceding letter which, in the transcript, bears date October 10th], The. contract you obtained from our Mr. Cullom was obtained by you under misrepresentations that in law amount to fraud, and we decline to have any dealings with you under any agreement so obtained. Very truly yours, [signed] Chas. F. Cullom & Co.”
“Office of Irwin Jamison. Building Material, etc. 415 Carondelet Street, New Orleans, Oct. 18th, 1899. Messrs. Chas. F. Cullom & Co., Carondelet & Union Sts. City-Gentlemen: Your letter of the 14th inst., in reply to mine of the 11th inst., has been received. The calumnies therein contained will not aid you in your attempt to evade the obligations of your contract with me; and the notice that you have given me that you decline to have any further dealings with me under our contract is an active breach thereof, and I shall proceed at law to recover what is due in consequence. Yours truly [signed] Irwin Jamison.”
This terminated the correspondence and the relations between the parties. Cullom & Co. obtained sand from Jahncke at 80 cents per cubic yard, and went on with their work; and upon June 28, 1900, Jamison brought this suit, alleging that he had arranged to obtain and deliver the sand called for by his contract at a cost to himself of 75 cents per cubic yard; that defendants, including Dr. Pratt, as a member of the firm, have acted in bad faith; that they “are near the completion of their contract with the drainage commission, and have used more than thirty thousand cubic yards of sand”; and that he has been damaged to the extent of the differ *786 ence between tbe price at which he could have delivered, and the price that they had agreed to pay for, the same, to wit, 20 cents per cubic yard, or a total of $6,000, for which he prays judgment against them in solido.
The defendant Pratt, by way of exception, pleads that the suit is premature, that the petition is vague and indefinite, and that it discloses no cause of action. The defendant •Cullom excepts that there is misjoinder and nonjoinder of defendants, inasmuch as the firm of Chas. F. Cullom & Co. is an ordinary partnership, composed of exceptor and Benjamin L. Cullom, and that the members of said firm are not liable in solido.
The exception of misjoinder was referred to the merits, and the other exceptions were •overruled. Thereafter,, on November 7th, the defendants having failed to answer, there was judgment by default, which was set ■aside November 12th by the filing of the answers. The defendant Pratt pleads a general denial, and especially denies that he is a member of the firm of Cullom & Co. The defendant Cullom denies the allegations of the petition, except as admitted. “He admits the execution of the document filed herein,” insists that the firm of Chas. F. Cullom & Co. is composed of himself and Benjamin L. Cullom, and especially denies that Pratt is a member thereof. Something over three weeks later, on December 5th, the defendant Oullom, with leave of the court, filed an amended answer, in which he alleges that he was induced to sign the contract with plaintiff by fraud and misrepresentation, in this: that when he was first approached by plaintiff with reference to “a sale of cement” he refused to contract with him, because of his doubt as to plaintiff’s ability to meet his 'engagements; that plaintiff thereupon exhibited letters from F. Jahneke, whom defendant believed to be the only person in a position to deliver the large quantity of cement needed by him, whereby he was led to believe “that he was contracting with said Jahneke, through the plaintiff herein,” and that Jahneke refused to sell at a lower price than that asked by the plaintiff, and would hold his offer at that price open for but a limited time; that, after signing the contract in question, he learned that Jahneke was not connected with plaintiff, that the letters exhibited by plaintiff as coming from him were not written or signed by him, and that Jahneke “desired to and did contract with respondent direct.” He further alleges that the inconvenience to thé public would have been greatly increased “if in any way the supply of cement and other material was not promptly delivered”; that he was compelled to enter into the contract with Jahneke because of the inability of the plaintiff, without the assistance of Jahneke, to execute such a contract; and that he would not have contracted with the plaintiff, but for the latter’s representation that Jahneke was interested with him.
A motion was made to rescind the order for the filing of the amended answer, and that “no evidence be admitted thereunder,” ,on the ground that it changed the issue, as made by the unqualified admission of the defendant, and the motion- was denied. Upon the-trial the plaintiff, through his counsel, objected “to any testimony, under the supplemental and amended answer, going to show that the contract was.made with any.other person besides Irwin Jamison, or showing fraud, or any of the allegations under the supplemental and amended answer, upon the ground that the original answer admitted unqualifiedly the making of the contract,” and left simply the question of damages. This objection was overruled, as going to the effect, a bill was reserved, and it was agreed that a like objection, ruling, and bill should be considered made and reserved to all testimony similar in character. Pretermitting the testimony thus objected to, the evidence admitted establishes the following facts, to wit:
With a view to carrying out the contract which he had made with Cullom & Co.,1 the plaintiff upon the same day entered into a contract with J. E. Crusel, whereby the latter agreed to deliver the sand required, in the manner and as called for by Oullom & Co., at 75 cents per cubic yard. Crusel had been for five or six years secretary and manager of the Stone, Sand & Gravel Company, and in that capacity had made and executed contracts for the delivery of large quantities of sand in New Orleans. He was therefore .familiar with the business, and, though he contracted with the plaintiff on his own account, he testifies that he could have complied with the obligations assumed by him, *788 and gives explanations which entitle his statements to acceptance. Upon the other hand, whilst Charles E. Cullom, for his firm, was engaged in making the contract with the plaintiff at the office of the latter, the secretary of his firm, at the office of the firm, was engaged in negotiating with Mr. Jahncke, as the result of which the latter expressed himself willing to furnish the sand required by Cullom & Co. at 80 cents per cubic yard. This negotiation was, however, merely tentative, and subject to the approval of Cullom & Co., and Charles F. Cullom was informed of it by the secretary upon the day that, and shortly after, he had signed the contract with the plaintiff. But neither he, nor any one assuming to represent his firm, took any step towards the repudiation of that contract until October 10th, 13 days after it had been signed, and after he had learned that he could have done better by contracting with Jahncke.; and the step then taken was the writing of the letter by Dr. Pratt, after which followed the correspondence already given.
The relations between Dr. Pratt and Chas. F. Cullom & Co. are shown to have been as follows:
Pratt had agreed to provide the bond, in the sum of $05,000, which Cullom & Co. were required to furnish in order to secure the execution of their contract with the drainage commission. He had also agreed to advance $15,000, with which to enable Cullom & Co. to carry on the work contemplated by that contract, and he was to receive one-half of the profits to be received therefrom. He provided the bond, and up to the date of the trial had advanced over $50,000, and was still making advances. • As neither Chas. F. nor Benjamin L. Cullom, who are said to compose the firm of Cullom & Co., appear to have had means, Pratt, of course, stood to lose the amount advanced by him, together with any amount for which Cullom & Co. might be liable on the bond which he had guarantied, unless the whole should be made good by the earnings under the contract. As between him and Cullom & Co., however, the latter were to be liable for any losses that might be sustained, and the machinery and appliances used by them, as also the money which under the contract was to be held in reserve by the drainage commission, were pledged to secure their obligation in that respect. It does not appear that Pratt held himself out as a partner, or that he was-so held out, to his knowledge, or that, except in the matter now under consideration, he has ever actively intermeddled, as one having authority, in the management of the business. On the contrary, it is in evidence that persons who were about to enter into-contracts with Cullom & Co. frequently, if not usually, applied to Pratt, as the party •who was understood to be aiding or backing that firm from the outside, to be guarantied the payments to be made to them under such, contracts; and it seems to be reasonably certain that the plaintiff made such an application before the signing of the contract herein question, either with reference thereto, or with reference to a proposed contract for cement, and that Pratt emphatically refused to comply with his request. The plaintiff and Crusel testify that Cullom stated that Pratt was his partner, and it is not unlikely that he did, but in his testimony he denies-that such was the case; and Pratt, also, stating what his relations with Cullom & Co. were, testifies that he did not consider himself a partner.
The evidence fails to show how much sand had been used by Cullom & Co. up to the date of the filing of this suit. The defendants, through their counsel, objected to the introduction of proof as to the sand so used after that date, and, the objection having, been overruled, the point was reserved.
Opinion.
The objections to the introduction of evidence in support of the allegations of the amended answer were well taken, and should have been sustained. The defendant Chas. F. Cullom, acting for Chas. F. Cullom & Co., having entered into a contract in writing with a man whom he knew to be Irwin Jami-son, and who, by the terms of the written instrument signed by both parties, professed to be ácting for himself, and neither mentioned nor alluded to any one else, cannot now be permitted to show that he thought that Jamison was representing Jahncke, and that the contract was therefore made with Jahncke, and not with Jamison. And equally untenable is the position of the defendants with regard to the defense and proof of fraud.
*790 By the answer first filed, the making of the contract was specifically admitted, and the defendant Cullom tendered no other issues than that Dr. Pratt was not a member of the firm, and (by the general denial) that Cullom & Co. had been guilty of no default, and the plaintiff had sustained no damage. It is too plain for discussion that the amended answer, alleging that the contract, the execution of which had thus been admitted without qualification, is voidable, because superinduced by fraud and misrepresentation, changed the substance of the defense, and substituted a new issue in place of those originally presented. And this is inadmissible. Code Prac. arts. 419, 420; Abat v. Bayon, 4 Mart. (N. S.) 516; Stilley v. Stilley, 20 La. Ann. 55; Case, Receiver, v. Watson, 22 La. Ann. 351; King v. Gantt et al., 33 La. Ann. 1148.
Upon the other hand, the evidence in the record conclusively negatives- the idea that Dr. Pratt intended to become a partner with Chas. F. Cullom & Co., and it affirmatively shows that, as between himself and the members of that firm, he did not become a partner. It also shows that he did not, under such circumstances as could have led the plaintiff into making the contract in question, assume the administration of the affairs of the firm, or hold or knowingly allow himself to be held out as a partner.
Beyond this, it is indisputable that the firm of Chas. F. Cullom & Co. is an “ordinary partnership,” concerning the members of which the Civil Code, among other things, provides that:
“Art. 2872. Ordinary partners are not bound in solido for the debts of the partnership, and no one of them can bind his partners unless they have given him power to do so either specially or by the articles of partnership.”
And this court has said: “When the co-partners in an ordinary partnership deny that they are liable for a contract made by one of them, the creditor who seeks to hold them responsible under it must prove one of two things — either that the contract was authorized by them, or that it inured to their benefit. In this we cannot see any great hardship. It is the duty of every one who deals with a member of an ordinary partnership who shows no authority to bind his co-partner to know, at his peril, that the transaction is to inure to the benefit of the partnership. A different construction appears to us contrary to the spirit and letter of the afore-quoted provisions of our Code, as well as to our uniform adjudications on the subject. Slocum v. Sibley, 5 Mart. (O. S.) 684; Louisiana Bank v. Kenner’s Succession, 1 La. 390; Reynolds v. Swain, 13 La. 197; McGehee v. McCord, 14 La. 364; and Derbigny v. Mondelli, 15 La. 496.” Dumartrait, Adm’r, et al., v. Gay et al., 1 Rob. 64. See, also, Hamilton et al. v. Hodges et al., 30 La. Ann. 1292.
To the conditions, as thus stated, underwhieh a creditor may recover from an ordinary partner upon a contract made by another partner, it may be added that if one-partner allows another to represent him, and ratifies his acts, so as to lead those with whom he deals to believe that he is authorized for the purposes of a particular transaction, he may estop himself to deny the authority.
Under the law and jurisprudence, then, and,in view of the fact that no effort has. been made to show that Pratt authorized Cullom & Co. to bind him by the contract with the plaintiff, and that, theirs having-been an ordinary partnership, they could not have'so bound him without such authority,, even though he had been one of their partners, it seems useless to pursue this branch of the inquiry.
The only remaining question which presents itself in this connection is, did Dr.. Pratt make himself liable on plaintiff’s contract with Cullom & Co. by undertaking to-repudiate it? And this -question must be-answered in the negative. If he had been the partner of Cullom & Co., he would have-had the right to repudiate the contract in so far as it might have been thought to impose' any liability on him, because he had not authorized it and had derived no advantage from it. As he was not a partner, he had no right to intermeddle in the matter, except as between himself and Cullom & Co., and the contract was not authoritatively repudiated until action to that effect was taken by Chas. F. Cullom, acting for and in-the name of his firm.
As appears from the statement which precedes this opinion, this suit was filed June *792 28, 1900.' The measure of damages upon which the plaintiff relies is the difference between the price at which Crusel had agreed to furnish the sand required, and the price which Cullom & Co. had agreed to -pay for the same. The total amount claimed is .predicated upon the allegation that Cullom .& Co. had used 30,000 cubic yards of sand, which they ought to have taken from plaintiff, up to the date of the bringing of the .suit; but it is not shown how much sand had in fact been used up to that date, though, ■by evidence introduced over the objection of ■defendants’ counsel, the total quantity used up to the month of October, 1900, is established.
The objection interposed by the defend.ants’ counsel was well taken, since, quoad the sand which Cullom & Co. might or might not have required in the future, the plaintiff had no standing in court by virtue of the petition, and he did not at any time ask to .amend his pleadings.
Under these circumstances, and although .a case is otherwise made out against Chas. F. Cullom, and possibly against Chas. F. Cullom & Co., the plaintiff can take nothing by this action.
It is therefore ordered, adjudged, and de■creed that the judgment appealed from be affirmed in so far as it rejects the demand •of the plaintiff against George K. Pratt, and that it be annulled, avoided, and set aside in so far as it finally rejects the demand of the plaintiff against Chas. F. Cullom and Chas. F. Cullom & Co., and that there now be judgment rejecting said demand as .against Chas. F. Cullom and Chas. F. Cullom & Co. as in case of nonsuit; said parties .last mentioned to pay the costs of the appeal.