## HARTMAN–SALMEN CO., Inc., v. MALONEY. *

### No. 14582.

Court of Appeal of Louisiana. Orleans.
June 28, 1934.

Harold A. Moise, of New Orleans, for appellant.

*Rehearing denied Oct 15, 1934. Writ of certiorari denied Nov. 26, 1934.

O'Niell & O'Niell, of New Orleans, for appellee.

HIGGINS, Judge.

This is an action by a materialman on an open account to recover the sum of $551.70 for building materials alleged to have been sold and delivered to the defendant between the dates of June 6, 1927, and August 5, 1927.

There was judgment in favor of the plaintiff as prayed for, and the defendant has appealed.

The correctness of the judgment is attacked upon the following grounds:

"1. That no notice of trial was properly served.

"2. That no opportunity was given for the presence of the defendant or his witnesses.

"3. That the Court erred in not maintaining the motion to dismiss an account of the failure to furnish a proper bond for costs.

"4. That the clerk of court was without any authority to authorize the filing of an amended and supplemental petition.

"5. That the Court erred in not permitting the defendant to file the amended and supplemental answer and reconventional demand.

"6. That the plea of prescription of 3 years should have been maintained.

"7. That the evidence, offered by the plaintiff, did not warrant a judgment."

We shall discuss these issues in the above order.

■ 1 and 2. The first two points are predicated upon the same ground and we shall decide them together. The case was set for trial on the merits on January 19, 1933, and counsel for defendant was personally served with notice thereof. He wrote a letter to the district judge requesting a continuance which was granted. The case was reassigned to February 2, 1933, and defendant's attorney was again personally served with a notice of trial. In addition thereto counsel for plaintiff, the day before and on the morning of the trial, phoned his office to remind him of that fact. On the day in question defendant's attorney appeared in court with an affidavit, signed by himself, in which it was stated that he had not been served properly with a notice of trial although the sheriff's return showed personal service on him. The court refused to continue the case and ordered the trial to proceed. The record shows that defendant, through several different counsel, had requested continuances sixteen times, fifteen requests being granted, and the last one being refused. Our learned brother below concluded that the notice of trial was properly served and we see nothing in the record which would warrant us in saying that he abused his discretion in denying the continuance.

3. The complaint against the ruling of the trial court in refusing to dismiss the suit with reference to plaintiff's alleged failure to furnish a legal cost bond is three-fold: First, the bond was filed more than four days after defendant's notice of the defective condition of the bond was served upon plaintiff, as required by Act No. 284 of 1928, amending section 3 of Act No. 112 of 1916; second, that as the surety on the bond resided in the parish of Orleans, and, therefore, without the jurisdiction of the trial court, the bond was null, void, and of no effect under the provisions of Act No. 67 of 1876, and was equivalent to the plaintiff failing to provide any bond at all, citing, in support of the contention, Marine Bank & Trust Co. v. Martel, 3 La. App. 639, and State ex rel. Veith v. Capdevielle, 140 La. 811, 74 So. 110, and, third, that under the provisions of Act No. 284 of 1928, amending and re-enacting section 3 of Act No. 112 of 1916, plaintiff's right to correct errors or omissions in the bond was limited to the first bond, so that if the second one proved defective, he was not entitled to file an additional one.

■ We have carefully checked the record and there is nothing in it to indicate or show the date on which the plaintiff was served with notice of the alleged illegal, null, and void condition of the bond by the defendant. In the absence of anything in the record to the contrary, we must assume that the bond was timely filed, particularly since the district judge apparently reached that conclusion and overruled the defendant's motion to dismiss.

With reference to the two above cases relied upon by the defendant, it is sufficient to say that in the case of Stewart v. Clay, 166 La. 278, 117 So. 147, the Supreme Court overruled them, holding that where the surety on the bond resided in a parish outside of the jurisdiction of the court where the bond was furnished, that this irregularity could be corrected under the provisions of Act No. 112 of 1916. See, also, Costello v. Southern Pub. Company, Inc., 140 La. 161, 72 So. 910.

The soundness of the views of the Supreme Court in that case is further borne out by the provisions of Act No. 67 of 1876, because the act contains the following provision:

"Where surety is tendered of persons re-

siding out of the parish, the judge shall pass on the sufficiency thereof, and shall require such proof as he may deem necessary."

■ Therefore the fact that the surety on the bond resided outside of the jurisdiction of the court was not a circumstance that rendered the bond null and void because the surety might be shown to be competent upon such proof as the court would require.

As we read and understand the provisions of Act No. 284 of 1928 and Act No. 112 of 1916, two situations are contemplated: (1) Where the party who furnishes the bond is served with a notice that the bond is defective and voluntarily furnishes a new, additional, or supplemental bond in compliance with his adversary's notice; (2) where the party furnishing the bond elects to stand upon the bond filed as being valid, necessitating the court, on rule, to determine the question, vel non, of whether or not the bond is defective or illegal. Under the language of both of these statutes it appears to us that where another bond is furnished in response to the notice of the claimed defective condition of the bond that was filed, there is no limitation upon the number of times that this procedure may be repeated. However, where the furnisher of the bond takes the position that the bond is legal and free from defects, or where he fails to file a supplemental or new bond within the period of time allowed by law (i. e., two days under the act of 1916, but now four days under the act of 1928), and upon proper rule the court decides the bond is illegal, insufficient, or defective, the party furnishing it will have the right to file a new bond, but if "this new bond be found to be defective in any respect whatever, or the surety or sureties insufficient, the person furnishing such new bond shall not thereafter be entitled to furnish any additional bond."

We are fortified in our interpretation of these statutes because it will be noted that the act of 1928 amends and re-enacts section 3 of Act No. 112 of 1916 and does not contain any repealing clause. Now, under sections 2, 5, and 9 of Act No. 112 of 1916, and particularly section 5, it clearly appears that where the party voluntarily furnishes the new bond and it is claimed to be defective, insufficient, or illegal, he shall have the right, upon receiving notice of that fact from his adversary, "to furnish any further new, supplemental or additional bond, or surety or sureties."

■ In the instant case the first bond furnished by the plaintiff was in response to the defendant's request for a cost bond and the second bond was voluntarily filed in compliance with defendant's notice of the alleged defective condition of it and consequently was never declared invalid by the court, so that the only bond that the plaintiff elected to stand upon was the second bond, which the court declared to be legal. Therefore, in any event the plaintiff was entitled to file a new or additional bond, or to correct the errors or omissions in the second one. See Southern Development Co. v. Greco, 8 La. App. 1; Shushan v. Maloney et al., 148 La. 954, 88 So. 229; Garland v. Keen, 18 La. App. 312, 137 So. 343.

■ There is no doubt that the second bond was defective in that it lacked the affidavit required of the principal and the surety thereon, as provided by section 4 of Act No. 112 of 1916, but an insuperable barrier to the defendant's right to insist that those omissions should have been corrected, or even to raise any of the issues that we have already disposed of with reference to the cost bond, results from his way of pleading and the procedure followed in conducting the case.

The record shows the suit was filed on December 30, 1930. On January 21, 1931, the defendant filed a motion for a cost bond, which was furnished as required by the provisions of Act No. 111 of 1926, on January 27, 1931. On October 6, 1931, defendant filed an exception of no right or cause of action and a plea of res adjudicata, which, apparently, were overruled. On October 7, 1931, defendant filed an answer in the form of a general denial, reserving the benefits of the exceptions and pleas theretofore filed.

On February 10, 1932, defendant filed a rule to show cause why the suit should not be dismissed because the cost bond furnished by the plaintiff was null and void and of no effect, because the surety who had signed it was a resident of the parish of Orleans and, therefore, without the jurisdiction of the Twenty-fourth judicial district court for the parish of Jefferson, contrary to the requirements of Act No. 67 of 1876. This rule was set for trial on February 17, 1932, and on February 16, 1932, the plaintiff furnished another cost bond with a surety who lived in the parish of Jefferson. On February 19, 1932, the defendant filed a plea of prescription of three years against the claim, which was overruled. On March 29, 1932, defendant attempted to file an amended and supplemental answer and a reconventional demand, which was rejected by the district judge, and the case was then again ordered

set for trial on the merits on May 5, 1932, after having been previously set for trial a number of times and continued on defendant's motion. On June 6, 1932, the defendant filed another rule against the plaintiff to show cause why the suit should not be dismissed on the ground that the second cost bond was fatally defective, since the surety and the principal thereon had failed to make an affidavit as required by the provisions of Act No. 112 of 1916 to the effect that the surety was worth in seizable assets over and above his liabilities the amount of the bond; and that the plaintiff had failed to furnish the second bond within four days after the first bond was declared invalid, as plaintiff was required to do under the provisions of Act No. 284 of 1928. The trial court dismissed the rule. On June 6, 1932, defendant also filed a rule to show cause why he should not be permitted to file a supplemental answer and reconventional demand. This rule was also dismissed. The case was again ordered set for trial on July 5, 1932, and on that day counsel for the defendant served notice on the district judge that he would apply to the Supreme Court for writs of prohibition, certiorari, and mandamus to have the ruling of the district judge, in refusing to permit the filing of the supplemental answer and reconventional demand, reviewed. The Supreme Court denied the application on July 6, 1932, for the reason that the remedy was by appeal from a final judgment. The case was again set for trial on June 19, 1933, and defendant again requested a continuance, which was granted, and the case then reassigned for trial on February 2, 1933. On that date defendant's attorney appeared and requested a continuance on the ground that he had not been properly served with notice of trial, as we have already explained, in answer to the first two questions presented. Defendant then renewed his motion to dismiss the suit on the ground that the second cost bond was defective and not filed within the proper delay as above explained. The motion was overruled. The defendant's counsel notified the trial judge of his intention to again apply to the Supreme Court for writs of prohibition, certiorari, and mandamus, but never followed the matter up by applying for the writs. The judge, however, being of the opinion that defendant's remedy was by appeal from a final judgment, ordered the case to be proceeded with on the merits. Defendant's counsel then withdrew from the courtroom and the plaintiff offered evidence in support of his claim. Judgment was entered as prayed for in favor of the plaintiff. Defendant, on February 7, 1933, filed a motion for a new trial, complaining of the ruling of the trial court on practically all seven of the issues raised on appeal. The judge, a quo, refused a new trial and defendant then appealed suspensively to this court.

In the case of Shushan v. Maloney et al., 148 La. 953, 88 So. 229, 230, plaintiff instituted a partition suit. Before pleading to the petition the defendant filed a rule to compel the plaintiff to furnish a bond for costs which was furnished by the plaintiff. Defendant took a rule to show cause why the suit should not be dismissed on the ground that the surety on the bond was not competent, having an alleged interest in the suit. The district judge, being satisfied that the surety was qualified, dismissed the rule. A new trial was requested, but in the meantime plaintiff had furnished an additional bond for costs with another surety. Defendant filed a second rule to dismiss the suit on the ground that the new bond was filed too late, i. e., more than the two days allowed by section 3 of Act No. 112 of 1916. The motion to dismiss the suit was again overruled and defendant reserved a bill of exception and then filed an answer to the suit, putting it at issue on the merits. The case was regularly fixed for trial. Thereupon defendant applied to the Court of Appeal for the parish of Orleans for writs of certiorari and mandamus to compel the civil district court to dismiss the suit, which the Court of Appeal declined to issue. In affirming the decision of the district court and the Court of Appeal, the Supreme Court said:

"Be that as it may, relators' application to the Court of Appeal and to this court for the exercise of supervisory jurisdiction in the matter came too late after the relators had filed their answer to the suit in the district court and had put the case at issue upon its merits."

We believe that case to be apposite here under the above-recited facts, which show that the defendant filed an answer, and the case was set for trial on the merits on several occasions before the complaint against the second cost bond was made.

■ 4. The fourth contention is based upon the position that the clerk of court had no authority, under Act No. 204 of 1924, to sign the order permitting the plaintiff to file the supplemental and amended petition. The answer to that argument is that it is unnecessary to have the trial judge sign an order permitting the filing of a supplemental and amended petition before issue is joined. Arti-

cle 419 of the Code of Practice requires leave of court to file a supplemental petition only when issue has been joined.

In the case of Tarver v. Quinn, 149 La. 369, 89 So. 216, 220, it was held:

"Nowhere in the Code is leave of court required for an amendment before issue joined. * * *

"And why require leave of court for doing a thing which the plaintiff may do without leave by simply abandoning the petition already filed and filing another? Until defendant has joined issue, why should not the plaintiff be allowed to file as many supplemental petitions as may be useful in the premises."

See, also, Blakeney v. Easterwood, 3 La. App. 796; Lehman Dry Goods Co. v. Lemoine, 129 La. 383, 56 So. 324.

Furthermore, it was not necessary for the plaintiff to file a supplemental petition asking that the citation be again served. All that was needed was to have the citation, with a copy of the original petition, served on a legal day.

■ 5. Was the ruling of the trial court correct in refusing to permit the defendant to file a supplemental answer and petition in reconvention, after having entered a general denial? The record shows that the defendant's original answer was filed on October 7, 1931. Thereafter the case was set for trial on the merits on a number of occasions and continued each time on defendant's request, and particularly on March 17, 1932. On March 29, 1932, defendant attempted to file the supplemental and amended answer and reconventional demand.

In this supplemental answer and petition of reconvention, defendant sought to specially plead that the materials furnished were so defective that he suffered damages as the result of the use of them and, therefore, was entitled not only to recover the alleged damages sustained, but also to be relieved of the payment of the purchase price thereof. The allegations of the original petition are the usual ones made where the suit is predicated on an open account. Defendant was content to simply deny those allegations.

In Babcock v. Shirley, 11 La. 75, the court said:

"This case turns mainly upon the question whether the court below erred in refusing the defendant leave to amend his answer, after having pleaded the general denial, by alleging a failure of consideration in the contract sought to be enforced. * * *

"The appellees rely upon articles 419 and 420 of the Code of Practice, and several decisions of this court, in support of the proposition, that such an amendment is inadmissible after issue joined upon the general denial. These articles authorize the plaintiff, even after issue joined, to amend his petition, provided the amendment does not alter the substance of his demand by making it different from the one originally brought; and the defendant, to amend his answer, subject to the same rules, and add to it new exceptions, provided they be not of the dilatory kind.

"The Code has thus restrained the discretion of courts, in relation to amendments, instead of allowing its liberal exercise for the furtherance of justice. This court has already had occasion to give an interpretation to these articles, and the question here raised must be considered as settled. In the case of Calvert v. Tunstall, 2 La. 207, it was held, that after the general denial, an amended answer setting up a want of consideration could not be received. The two cases cannot be distinguished."

To the same effect see Jamison v. Charles F. Cullom & Company, 110 La. 781, 34 So. 775.

In the case of Jordan v. Checker Cab Co., 10 La. App. 132, 120 So. 426, the plaintiff sued for damages for personal injuries. The defendant entered a general denial. Later defendant was permitted to file a supplemental answer averring that the collision had been caused by an unknown driver running into defendant's taxicab. The trial court subsequently rescinded the order permitting the filing of the supplemental answer and the Court of Appeal held that the ruling was correct.

In the case of State v. Bozeman, 156 La. 635, 101 So. 4, 6, the Supreme Court said:

"Defendants sought to file supplemental and amended answers, containing a plea of estoppel and a plea to the jurisdiction, on the day of the trial. Plaintiffs objected to 'all portions of the answers except such as question the jurisdiction of the court,' on the ground that they came too late, and that they changed the issues after the case was at issue. The objection was sustained, reserving defendants the right to renew it to the objectionable portion of the answers 'if the evidence introduced by the plaintiffs will justify it.' Defendants excepted to the ruling of the court. * * *

"We think the ruling of the court was correct, first, because the amendments were tendered after the case was fixed and called for trial (McKown v. Mathes, 19 La. 542; Duval

v. Kellam, 1 Rob. 58; Wright v. Railey, 13 La. Ann. 536; Case v. Watson, 22 La. Ann. 350; Spyker v. Hart, 22 La. Ann. 534); secondly, because the issues had been made up between the parties and could not be changed by further pleadings (McKown v. Mathes, 19 La. 542; Case v. Watson, 22 La. Ann. 351; Guilbeau v. Thibodeau, 30 La. Ann. 1099; Schmidt & Ziegler v. Ittman, 46 La. Ann. 894, 15 So. 310)."

As we view the case, the general denial was equivalent to the defendant denying that he purchased the materials from the plaintiff. The supplemental answer sought to be filed was tantamount to an admission of the purchase of the material, but that there was a failure of consideration because the material was defective. Certainly this was changing the issue and the amendment was not permissible under the articles, Nos. 419 and 420 of the Code of Practice.

Defendant further argues that as plaintiff was a resident of the city of New Orleans and the defendant a resident of the parish of Jefferson, under the provisions of Act No. 50 of 1886, amending article 375 of the Code of Practice, the reconventional demand and the original demand need in no way be connected with one another; and, as matter of fact, that the reconventional demand did grow out of the main demand. It might well be that the defendant was entitled to file a reconventional demand before filing the general denial, but, having done so, he cannot be permitted subsequently to change the issue especially where the case has been set for trial a number of times on the merits and continued on defendant's motion. The above referred to articles of the Code of Practice and authorities are applicable and not article 375 of the Code of Practice.

6. The plea of prescription of three years is without merit because it was shown that the previous suit had been filed and had been dismissed only because it was erroneously addressed to the "Civil District Court for the Parish of Jefferson." However, that suit was sufficient to interrupt prescription. In Spring v. Barr, 9 La. App. 734, 120 So. 256, 258, the court said:

"Prescription will be interrupted by a judicial demand, though the plaintiff be nonsuited on the merits, or the court be without jurisdiction. Geisenberger v. Cotton (Litchenstein & Company), 116 La. 651, 40 So. 929; Pecquet v. Pecquet's Executor, 17 La. Ann. 219; Blanc v. Dupre, 36 La. Ann. 847."

7. Finally, it is said that there is no adequate proof in the record to warrant a judgment in favor of the plaintiff. The transcript shows that Mr. Lively, the credit manager, and Mr. Willis, the then vice president of the plaintiff company, testified that the materials described on the itemized statement annexed to and made part of the petition were sold and delivered to the defendant and that the prices charged therefor were reasonable. The trial court accepted this testimony and we see no reason to interfere. In any event, only an issue of fact is involved and it is clear that we are unable to say that the judgment of the trial court was manifestly erroneous.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.