62 So.2d 190 (1952)
HARDING
v.
WATTIGNEY.
No. 19946.
Court of Appeal of Louisiana, Orleans.
December 15, 1952.
*191 George O'Dowd, New Orleans, for defendant-appellant.
Lemle & Kelleher, Charles Kohlmeyer, Jr., Henry L. Newell, William Stein, Jr., New Orleans, for plaintiff-appellee.
McBRIDE, Judge.
Herbert L. Harding, the owner of eleven building sites in New Orleans (Algiers), which he acquired in the year 1918, in the latter part of 1946 entered into a verbal agreement with one Julius J. Weigel, whereunder Weigel was to construct one or more houses on the land and sell the property after the improvements had been completed. It was agreed that out of the proceeds of the sale of each building site Harding was to receive $2,000 for his land, and the balance of the purchase price was to belong to Weigel. Harding declares that this verbal agreement was made with Elmer Weigel, the brother of Julius J. Weigel, and that he had no contractual relations whatever with Julius J. Weigel. On the contrary, Julius J. Weigel testifies that it was he, and not his brother, who entered into the venture with Harding. The record *192 bears out the contention of Julius J. Weigel, and we are satisfied that the agreement was confected between him and Harding.
But, be that as it may, the Jefferson Roofing and Siding Company, of which Julius J. Weigel was sole proprietor, then commenced the construction of eleven houses and ultimately completed two of them. Two were partially completed, and the foundations and framing of seven others were set up. Julius J. Weigel then defaulted on his job and the construction work was abandoned some time early in 1947.
On January 22, 1951 Lee P. Wattigney filed an affidavit in the Mortgage Records of Orleans Parish in M.O.B.1783 folio 384, claiming that there was due him by Harding and Weigel the sum of $1,535, representing labor and materials which he put into the improvements on Harding's Lots 3, 4, 5, 6, 7, 8, 9 and 10 of Square 241, Fifth District, and that he has a lien on the said property and improvements.
The affidavit sets forth that Wattigney: (a) constructed a garage at 622 Majestic Place, on Lots 7 and 8, furnishing all labor and materials therefor for the amount of $500; (b) that he performed painting and carpentry and other necessary labor at 618 Majestic Place on Lots 9 and 10, at 622 Majestic Place, on Lots 7 and 8, at 626 Majestic Place, on Lots 5 and 6, and at 630 Majestic Place, on Lots 3 and 4, which was necessary to place the buildings in condition for sale, the work covering a period of twenty-three weeks, thirty hours per week, at the rate of $1.50 per hour, or $1035. The lien was reinscribed in the Mortgage Office on January 18, 1952 in M. O.B.1833 folio 151.
This suit was instituted by Herbert L. Harding against Lee P. Wattigney and the Recorder of Mortgages for the Parish of Orleans to have Wattigney's asserted lien declared null and void, and to have the inscription and the reinscription thereof cancelled and erased. The petition alleges that the inscriptions should be cancelled and erased from the Mortgage Records for the reason that the lien is purportedly for materials and supplies furnished and for labor performed in the construction of a garage. Harding avers that he did not consent to the construction of the garage, nor did he authorize the lienor, either verbally or in writing, to erect the same, and that consequently Wattigney has no lien on or claim against the property. In the alternative, Harding alleges that should the court find that Wattigney has a valid lien, the amount claimed in the affidavit is excessive and should be reduced "to its true and lawful worth." Relief was prayed for accordingly.
The Recorder of Mortgages made no defense, but Wattigney, who is sometimes in this opinion referred to as the defendant, filed his answer in which he admits the filing and reinscription of the lien. The answer then alleges:
"Defendant denies that the above inscription should be cancelled and erased from the record of the office of the Recorder of Mortgages for the Parish of Orleans, for the reason that it is for materials and supplies furnished, and for labor performed on petitioner's property; that petitioner did consent to the said construction, and did authorize the said lienor, Lee P. Wattigney to perform the work as set out in his lien affidavit a certified copy of which is annexed hereto and made a part hereof; and therefore defendant is entitled to recognition of the lien in his favor as set forth in the [LSA-] Revised Statutes of La. of 1950, Title 9:4801-17; and denies all and singular the remainder of said article."
The prayer of the answer is:
"That this answer be deemed good and sufficient, and that after due proceedings had, there be a judgment herein in his favor recognizing his lien in the full sum of $1535.00 and for all such further relief as law, equity and the value of these pleadings permit."
After a trial of the matter below, plaintiff's demands were dismissed. This appeal was taken from the judgment by defendant, and the plaintiff-appellee has answered the appeal praying that the judgment be reversed and that the lien be declared *193 null and void, or alternatively that it be reduced in amount.
In view of the issues before the court, the first question that presents itself is whether Harding authorized the work.
Wattigney claims that he supplied the materials and performed the labor between April 18, 1949 and January 10, 1950, or about two years after Weigel's default on the job, and shortly after Harding had consummated an exchange of certain property with the City of New Orleans, which was necessary to clear a defect in Harding's title to the eleven lots. The record indicates that after Weigel's default the construction project had remained dormant for the two years. Weigel was endeavoring to have the property put in an acceptable condition for the purpose of securing an FHA loan thereon, and to that end Wattigney was employed to perform the necessary refinishing work.
Both Weigel and Wattigney testified that in April 1949 the former employed Wattigney to construct a garage and washroom at 622 Majestic Place at an agreed price of $500, Wattigney to furnish all labor and materials, and to do certain refinishing work on the four houses, at an agreed wage of $1.50 per hour. Wattigney's work was to consist of painting the four houses, carpentry and interior painting in two of them, filling in the land, and removing accumulated debris.
Weigel after employing Wattigney visited the property regularly. He states that Wattigney worked steadily during the period for which the lien is claimed and performed the services for which he has been engaged. A neighbor, Costello, who is acquainted with both the plaintiff and defendant, testified that he passed the property frequently in taking his child to school, and that he saw Wattigney painting the four houses, working inside the two that were incomplete, filling in the lots, and doing other jobs about the premises.
Plaintiff insists that he never employed Wattigney or authorized the doing of any of the work, and that if Weigel employed Wattigney he had no right or authority or power to do so. Harding, however, admits that he knew Wattigney errected the garage and washroom, and that he saw him at work during various stages of the work, but his story is that he advised Wattigney to leave the premises. Finally he says he told him "All right, if you want to build it, go ahead," and that Wattigney was "wasting his time." Wattigney denies that Harding made any statements of such nature to him.
We cannot be led to the belief that Harding was entirely ignorant of the fact that Wattigney rendered the other services during the period of those twenty-three weeks. Harding lived only a short distance away within range of vision and earshot of the buildings, and it is inconceivable that he could have been oblivious to the fact that work was being done on the buildings on his land.
The time put in by Wattigney is minutely itemized in a record book detailing the number of hours of labor performed on the various days during the period, against which there is not a word of evidence to the contrary, except the postulations of Harding that he knew nothing of Wattigney's activities. As was found by the trial judge, Wattigney's time aggregated six hundred ninety hours.
Counsel for Harding argue that the form of the record and the writing therein strongly imply that the book had been prepared as an afterthought because the pages are clean and the figures regular in each column. This is merely a theory of counsel unsupported by any part of the record. Wattigney states that he kept the book in his home and made entries as to the number of hours put in on the buildings, and this, we believe, accounts for the fairly neat appearance of the time book. There is no circumstance whatever which would lead to a conclusion that the entries are feigned and that by making them Wattigney was guilty of an attempted perpetration of fraud on Harding.
Wattigney was not able to show that he was authorized by Harding personally to refinish the buildings, but it was abundantly proven that Wattigney performed the work at the behest of Julius J. Weigel, *194 and that Harding had knowledge of the agreement between Weigel and defendant and remained silent during the progress of the work. The contract price for building the garage and washroom was $500, and the agreement as relates to the other work was that it was to be done at an hourly basis at the rate of $1.50 per hour.
In entering into the building scheme, both Harding and Weigel expected to profit therefrom, the former to receive out of the proceeds of the sale of the houses the sum of $2,000 for each of his building sites, while Weigel expected his profit to flow from his end of the venture, that is, the construction of the residences. This agreement amounted to nothing more or less than a joint adventure which is defined by our courts to be a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation. See Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847, and Daily States Publishing Co., Ltd. v. Uhalt, 169 La. 893, 126 So. 228.
As was said in the case of Young v. Reed, La.App., 192 So. 780, 784: "The relations between joint adventures are assimilated to those of partners * * *." The court also said:
"Liability for the obligations created by or arising from a joint adventure as between the participants inter se, is to be determined from the character of the business or undertaking engaged in.
"`The relation of joint adventurers is governed by the principles which constitute and control the law of partnership.' 15 R.C.L., page 500.
"`Partnerships are divided, as to their object, into commercial partnerships and ordinary partnerships.' [LSA-] Civil Code, Art. 2824.
"Commercial partnerships, in the main, are those which are formed for the purchase and sale of personal property and for carrying personal property for hire in ships, other vessels, or otherwise. [LSA-] Civil Code, Art. 2825.
"Arts. 2826 and 2873 of the [LSA-] Civil Code read:
"`Ordinary partnerships are all such as are not commercial; they are divided into universal and particular partnerships.'
"`In the ordinary partnership, each partner is bound for his share of the partnership debt, calculating such share in proportion to the number of the partners, without any attention to the proportion of the stock or profits each is entitled to.'"
A partnership formed to conduct construction work is an ordinary partnership. Williams Lumber Co. v. Stewart Gast & Bro., La.App., 21 So.2d 773; Hardeman v. Tabler, 36 La.Ann. 555; Moores v. Bates, 13 La.Ann. 40; McGehee v. McCord, 14 La. 362. The law is settled that the acts of a commercial partner in the course and scope of the business of the partnership binds all of the partners. However, it seems that the power of an ordinary partner to bind his co-partner is not implied merely from the fact of partnership and must be specifically given. Harding's plea that he at no time assented to Weigel's employment of Wattigney avails him nothing as Harding tacitly ratified the agreement made by Weigel with the defendant which was for the benefit of and resulted in the enhancement in the value of Harding's property. Hamilton v. Hodges, 30 La.Ann. 1290; Stewart v. Caldwell and Hickey, 9 La.Ann. 419; Jamison v. Charles F. Cullom & Co., 110 La. 781, 34 So. 775.
Harding's counsel argue that the garage and washroom was constructed by Wattigney for his own benefit and convenience as he had agreed in writing to purchase the house, 622 Majestic Place, from Weigel for $8,300, and in connection with the agreement made a cash deposit with Weigel to bind the sale. The record does reveal that Wattigney desired to acquire ownership of the building, and to that end entered into the sales agreement with Weigel, *195 who signed the agreement as owner of the property and accepted Wattigney's deposit. Although a formal act of sale was never passed, Wattigney moved into 622 Majestic Place and resided there for a period of about ten months and paid rent to Weigel at the rate of $30 each month. Wattigney needed a garage to house his automobile-truck, and promised to buy the property only after Weigel consented to the erection of a garage on the premises. The agreement was that Wattigney would be paid the $500 for building and furnishing the necessary materials for the garage and washroom and also for all of his other services when the act of sale was executed.
On behalf of Harding there is also called to our attention what counsel would have us believe is a suspicious circumstance, and that is, that although Wattigney claimed that there was due him a substantial sum for his work, yet during the whole period he remained in 622 Majestic Place he paid rent regularly to Weigel at the rate of $30 per month. We attach no special significance to this state of affairs. We think that Weigel has plausibly explained why it was necessary to exact rent from Wattigney. He states that he was under the obligation of carrying insurance on the buildings and intimates that he had no funds to pay the premiums, and that the rent collected was dedicated to discharging the insurance premiums.
The trial judge entertained no doubts as to the validity of the lien asserted by Wattigney and consequently dismissed the plaintiff's demands. We are fully in accord with this conclusion and see no error in the judgment insofar as it forecloses Harding's right to have the lien inscriptions cancelled on the ground that he had never authorized the work on the houses. The lien was filed in accordance with the provisions of Act No. 298 of 1926, Section 1 as amended, LSA-R.S. 9:4801, of which in part reads:
"Every * * * laborer, or furnisher of material, * * * who performs work or furnishes material for the * * * construction, repair, or improvement of immovable property, * * * with the consent or at the request of the owner thereof, or his authorized agent, or representative, or of any person with whom the owner has contracted for such work, has a privilege for the payment in principal and interest of such work * * * performed, or materials, * * * furnished, * * * upon the land and improvements on which the work * * * has been done, or materials, * * * furnished, * * *."
It was not necessary that Wattigney make service of his claim upon Harding. Where the building contract is unrecorded, a lien for materials furnished to or labor performed at the instance of a contractor is valid although a statement of the recorded claim is not served on the owner. Madison Lumber Co. v. McGuire, 14 La.App. 336, 124 So. 700; Lawrence v. Wright, 11 La.App. 703, 124 So. 697; Haynesville Lumber Co. v. Casey, 165 La. 1065, 116 So. 559.
Notwithstanding his belief that the lien was valid, the trial court declined to enter judgment in favor of defendant for the affirmative relief prayed for in the answer, because, as stated in the written reasons for judgment, there was no formal reconventional demand interposed by Wattigney.
This presents for consideration the question whether the defendant's answer actually sets forth a demand in reconvention.
By C.P. art. 374 a demand in reconvention is defined as:
"The demand which the defendant institutes in consequence of that which the plaintiff has brought against him, * * *."
The manner in which such demands may be pleaded is pointed out by C.P. art. 377:
"In all cases of reconvention, the defendant may plead it either as an exception in his answer to the principal demand, or institute a distinct and separate demand before the court in which the main action is pending; and the original plaintiff shall be bound to answer without pleading to the jurisdiction of the court, even if he has his *196 domicil elsewhere, provided the court be competent."
In Stringfellow v. Nowlin Bros., 157 La. 683, 102 So. 869, 870, the Supreme Court held that a reconventional demand:
"* * * is therefore subject to all the rules of pleading applicable to plaintiff, and must be set forth with the same clearness and precision as if alleged in a direct action. Frank v. Hollander, 35 La.Ann. 582; Bayly & Pond v. Stacey & Poland, 30 La.Ann. 1210; Teal v. Lyons, 30 La.Ann. 1140; Lallande v. Ball, 21 La.Ann. 185; McMasters v. Palmer, 4 La.Ann. 381. * * *"
Nowhere in the answer does defendant formally or specially assume the position of plaintiff in reconvention. The answer, to say the least, is vague, but we do not believe that the doctrine announced in the case of Stringfellow v. Nowlin Bros., supra, is applicable here for the simple reason that whatever vagueness may have existed in the answer was cured by the testimony of Wattigney and Weigel, to the admission of which no objection was made. This testimony is deemed to have enlarged defendant's pleading.
While it is true that demands in reconvention are subject to all of the rules of pleading applicable to a plaintiff, our law has never laid down any exact or sacramental formality for asserting such demands. As provided in C.P. art. 377 reconvention may be pleaded as an exception, or in the answer to the principal demand, or even by a separate suit before the court in which the main demand is pending.
In Dupuis v. Reynaud, 8 La.App. 116, the court held that where the allegations contained in the answer are specific as to the nature of the defendant's claim, a prayer for general relief is sufficient to warrant a conclusion that the answer constitutes a reconventional demand under C.P. art. 377.
The Supreme Court in Kinder v. Scharff, 125 La. 594, 51 So. 654, 656, said:
"`Under the prayer for general relief, suited to the nature and justice of the case, the court may render such judgment as would be given in a new suit, to avoid circuity of action.' 1 Hennen's Dig. (p. 734, 4) No. 5."
In Alfonso v. Ruiz, La.App., 2 So.2d 480, 483, in which we cited as authority Rives v. Starcke, 195 La. 378, 196 So. 657, we had this to say:
"* * * the Supreme Court has said that any plea by a defendant which constitutes more than a mere defense and, in fact, amounts to a counterclaim by the defendant, has the effect of a reconventional demand. * * *"
Defendant substantially sets forth a counterdemand against the plaintiff. After admitting the existence of the lien, he avers that the inscriptions are valid and should not be cancelled. Defendant specifically annexed and made part of the answer the affidavit filed in the Mortgage Office. The answer then sets forth that defendant performed the services detailed in the affidavit and is entitled to have the lien recognized. The prayer is that the lien be recognized against the property to the full extent of $1,535.
We readily conclude, after taking into consideration the averments and prayer of the answer, together with the unimpeached testimony of Wattigney and Weigel, that Wattigney stands before the court as a reconvenor, and that in such character he is entitled to affirmative relief against the plaintiff. No personal judgment against Harding was prayed for.
It is therefore ordered, adjudged and decreed that the judgment appealed from be amended so as to provide that Lee P. Wattigney, the defendant, have judgment in reconvention against Herbert L. Harding, plaintiff, recognizing the mechanic's lien and privilege filed by the defendant against the property described in the affidavit of lien, recorded in M.O.B.1783 folio 384, and reinscribed in M.O.B.1833 folio 151, of the Mortgage Records of the Parish of Orleans; and as thus amended and in all other respects the judgment is affirmed. Plaintiff-appellee is to pay all costs of court.
Amended and affirmed.