Blanc vs. Dupré.

## No. 1219.

JAMES A. BLANC, ADM'R, ET AL. VS. LASTIE DUPRÉ ET AL.

<div style="float:right">

| 36 | 847 |
|----|-----|
| e1091083. | |

| 36 | 847 |
|----|-----|
| 110 | 428 |

| 36 | 847 |
|----|-----|
| 116 | 655 |

</div>

Where one appointed as a curator of a vacant succession has brought suit in that capacity to recover from third possessors land belonging to the succession. citation in such suit will operate as an interruption of prescription in favor of the true heirs and representatives, although the appointment of a curator was a nullity. It is sufficient that the defendants had been seasonably notified by judicial demand and citation of the titles which are the foundation of the demand.

The transfer by parties of their rights in property involved in such a suit, to a third person, provided the suit itself is not discontinued or abandoned, is not such an abandonment as will defeat the interruption by citation, in their favor, upon the reversion to them of the rights so transferred.

A PPEAL from the Thirteenth District Court, Parish of St. Landry. Hudspeth, J.

*Perrodin & DuRoy* for Plaintiffs and Appellees.

*Lewis & Bro., K. Ballio* and *H. L. Garland* for Defendants and Appellants.

The opinion of the Court was delivered by

FENNER, J. Prior to the year 1818, Antoine Blanc died in St. Landry parish, leaving a large tract of land in said parish, which is the subject of the present litigation. On June 20, 1819, the brother of the deceased, Louis Blanc, accepted the succession, as sole heir, with benefit of inventory, which acceptance was duly recorded. On June 21, 1819, an esti-

mative inventory of the succession was taken.   By due proceedings the
land was sold at public offering in the same year, on terms of credit, to
Mace and Guilleland.   Mace being unable to pay the price, retroceded
his undivided share to Louis Blanc, by act duly recorded.   Guilleland,
failing to pay, Louis Blanc obtained judgment against him, seized, sold
and became the purchaser of his share of the land.

By the effect of these proceedings, Louis Blanc became in 1821 the
sole and undisputed owner of the land, under valid titles duly recorded.

Notwithstanding this condition of affairs, and probably in ignorance
of them, the succession of Antoine Blanc was reopened in this parish
in 1868, Elbert Gantt was appointed administrator thereof, the land in
controversy was inventoried as belonging to his succession, and, in due
course of probate proceedings, it was sold and adjudicated to Jas. K.
Dixon, under whose title thus derived the present defendants hold the
land.

This is a petitory action brought by the administrator and heirs of
Louis Blanc to recover the land.

The title of Dixon, under whom defendants hold. dates from January
11, 1870.

The instant suit was only filed in February 1882.

Two propositions may be laid down, at the threshold, as irrefragable:

1. That the sale under which defendants hold, being the sale of the
property of another, was null.

2. That, nevertheless, the title of defendants being just and transla-
tive of property, peaceable and uninterrupted possession thereunder in
good faith for ten years would perfect their title by prescription.

It thus became incumbent on plaintiffs to establish an interruption
of prescription.   To meet this exigency, plaintiffs rely upon citation of
defendants made in 1879, in a suit entitled C. C. Duson, curator, vs.
Lastie Dupré and others, which was twice before this Court.   See 32
Ann. 896; 33 Ann. 1131.

The succession of Louis Blanc had been opened in this parish as a
vacant estate and C. C. Duson had been appointed and qualified as
curator thereof.   In that capacity he brought the suit referred to against
the same defendants and upon the identical cause of action presented
in the present action.

To the effect of this citation, as interruptive of prescription, it is first
objected that Duson, curator, did not represent the succession of Louis
Blanc or his heirs, for the reason that his appointment was a nullity on
two grounds:

Blanc vs. Dupré.

1. That Louis Blanc having died in the parish of Orleans, where he resided, the probate court of St. Landry had no jurisdiction over his succession.

2. That Louis Blanc having left heirs residing in the State, the succession was not vacant and the court was without power to deal with it as such.

By reference to 32 Ann. 886, it will be seen that these very objections were urged to Duson's capacity in that suit, and were overruled on the ground that the nullity of Duson's appointment was not apparent on the face of the pleadings, and capacity could not be questioned collaterally.

Defendants say, however, that in the instant case the facts upon which the nullity rests are apparent on the face of plaintiffs' own pleadings and, therefore, may be noticed by the Court.

We will not discuss this question. Conceding the nullity of Duson's appointment as curator, we still think his suit, in that capacity, sufficed to interrupt prescription. He acted as the representative of the succession of Louis Blanc under an appointment by a court for that purpose. Had he recovered the property, his recovery would have inured to the benefit of the succession of Louis Blanc or of· those entitled thereto, whoever they might be. The literal terms of Art. 3518 C. C. were complied with, viz: "A legal interruption takes place when the possessor has been cited to appear before a court of justice either on account of the ownership or of the possession." The defendants were cited to appear before a court on account of ownership asserted in behalf of the succession of Louis Blanc by one claiming to represent that succession under judicial appointment *prima facie* valid, and we think the plaintiffs are entitled to the benefits of the interruption, as they would have been entitled to the fruits of the recovery had it taken place. The case falls clearly within the broad doctrine heretofore laid down by this Court: "In order to determine the extent and effect of a legal interruption, we must inquire more particularly into the object and cause of the action than into *the right of the plaintiff*, the manner in which it is prosecuted and the competency of the court in which it is instituted, and endeavor to ascertain how far *the knowledge of the titles on which the action is founded* has been brought home to the defendant by the judicial demand; and we do not hesitate to conclude that, if it be established that the defendant has been judicially notified of the titles which are the foundation of the demand, so as to acquire a sufficient knowledge of the rights which are sought to be enforced against

him by a suit, there results from said suit a legal interruption *in favor of those to whom such rights belong.*" Flower vs. O'Connor, 17 La. 219.

It is next contended that even if the citation in that suit was effective in favor of plaintiffs as an interruption of prescription, its effect was lost by reason of plaintiffs' *abandonment* of the suit under Art. 3519 C. C. which declares : " If the plaintiff in this case, after having made his demand, abandons or discontinues it, the interruption shall be considered as never having happened."

The abandonment is claimed as the effect of the transfer by plaintiffs of all their rights, claims, etc., in the land in controversy to C. C. Duson, made during the pendency of the suit.    This transfer was the subject of discussion in the decision rendered in 33 Ann. 1131, where it was annulled as the transfer of a litigious right and the suit, in consequence, dismissed, with express reservation, however, " of the rights of the suc-. cession of Louis Blanc or his heirs to vindicate their alleged titles to these lands by proper proceedings."

There was no discontinuance and no abandonment of the suit.   On the contrary, the suit proceeded to final judgment and was dismissed, without prejudice to plaintiffs' rights, as we have seen.

Whatever abandonment there was of plaintiffs' rights in the subject-matter of the suit was an abandonment, not in favor of defendants, but in favor of Duson, and defendants can take no advantage from it.   It was the obvious purpose of both plaintiffs and Duson in the transfer that the rights of the former to the land and the suit for the enforcement thereof should not be abandoned, but, on the contrary, should be prosecuted; as is evident from the provision in the transfer that plaintiffs should receive the stipulated price only in the event of Duson's recovery of the land.   As affecting the question of interruption, it could make no difference whether the suit was prosecuted for the benefit of plaintiffs or of their transferee, Duson.   We can find no force in the claim of abandonment, and must hold that the prescription invoked by defendants suffered a legal interruption and the plea must, therefore, be overruled.

On the merits, there is no defense.

The several bills of exception to the reception of evidence are without merit.

The identity of the land claimed by plaintiffs with that held by defendants is apparent from the fact that both claim from the same author and by descriptions substantially identical.

Judgment affirmed.