**Raymond D. LOUVIERE et al., Plaintiffs-Appellants,**

v.

**SHELL OIL COMPANY et al., Defendants-Appellees.**

No. 73–3686.

United States Court of Appeals, Fifth Circuit.

March 6, 1975.

Rehearing and Rehearing En Banc Denied July 3, 1975

See 515 F.2d 571.

W. D. Atkins, Jr., Lafayette, La., for plaintiffs-appellants.

John O. Charrier, Jr., New Orleans, La., for Shell Oil Co.

Donald A. Hoffman, Thomas W. Thorne, Jr., New Orleans, La., for Pneumatic Service & Equip. Co. and Ins. Co. of No. America.

Charles D. Marshall, Jr., New Orleans, La., for American Marine Corp.

Felicien P. Lozes, New Orleans, La., for Avondale Shipyard.

W. K. Christovich, New Orleans, La., for Pacific Movible et al.

Francis G. Weller, New Orleans, La., for Weigand Co. et al.

W. Eugene Davis, New Iberia, La., for Texsteam Corp.

Alfred S. Landry, New Iberia, La., for Pneumatic Service & Equip.

James E. Diaz, Lafayette, La., for Superior Oil Co.

Joel L. Borrello, New Orleans, La., for Argonaut Ins. Co.

Before WISDOM and BELL, Circuit Judges, and BREWSTER, District Judge.

WISDOM, Circuit Judge.

Raymond Louviere was injured when a hot water heater exploded in the living quarters of a fixed platform in the Gulf of Mexico. Almost three years after the explosion, he filed suit for damages. The district court dismissed his suit, holding that his claim had prescribed. Louviere appeals, alleging that a suit filed by his employer's workmen's compensation carrier against the same defendants interrupted the running of prescription. We reverse and remand.

Louviere was employed by Movible Offshore, Inc. as a cook in the living quarters of a fixed platform located on the outer Continental Shelf off the Louisiana coast. On May 6, 1970, a hot water heater exploded injuring some workers and killing others. Louviere suffered broken ribs, a broken collar bone, an injured back, and burns. After surgery on his back, he returned to work from time to time but on each occasion found himself unable to continue working. A psychiatrist concluded that the explosion had caused multiple trauma, and that Louviere later suffered an anxiety neurosis and depression. He has, allegedly, had severe pain from his injuries and has had episodic crying spells. He now asserts that he is totally and permanently disabled.

After the accident, Movible Offshore's compensation carrier, Argonaut Insurance Company, paid Louviere benefits under the terms of the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. §§ 901 et seq. Because Movible Offshore did not contest Louviere's right to compensation, benefits were paid without entry of an award by the deputy commissioner. Argonaut, as Movible's subrogee,[1] then filed a suit in federal district court on May 5, 1971, seeking reimbursement for workmen's compensation benefits paid as a result of the explosion. The complaint named as defendants, the owner of the platform, the manufacturers and sellers of the heater and some of its components, and the builder of the living quarters.

The complaint alleged that the negligence of the defendants was the proximate cause of the explosion; that cer-

---

1. An insurer paying workmen's compensation benefits under the Act, is subrogated to the employer's interests to the extent of benefits paid. 33 U.S.C. § 933(h). *Cf.* Hartford Accident & Indemnity Co. v. Byles, La.App.1973, 280 So.2d 624.

tain employees were injured or killed in the explosion; that, as a result of the explosion, Argonaut had become obligated to pay workmen's compensation benefits to those employees under the Longshoremen's and Harbor Workers' Compensation Act; and that, under the provisions of the Act, it was entitled to recover against the defendants all the benefits it had paid or might become obligated to pay.

On February 27, 1973, while Argonaut's suit was pending but before trial,[2] Louviere filed suit, seeking to recover damages from the same defendants, alleging their negligence as the cause of his injuries.[3] The defendants filed a plea of prescription, alleging that the one year prescriptive period allowed under Louisiana law for suit on a tort claim had passed and that Louviere's claim was barred. They argue that Argonaut's suit was not effective to interrupt prescription because it was barred by provisions of the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. § 933.

The Louisiana one year period of limitations governing personal injury actions, Art. 3536, La.Civ.Code Ann., is applicable to this action. Chevron Oil Co. v. Huson, 1971, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296.[4] Also governing, in the absence of applicable federal law, is LSA–R.S. 9:5801, providing for interruption of prescription by the filing of a suit.[5]

The appellees seek to avoid application of this rule in favor of Louviere, by invoking the rule that a suit that "does not state any right or cause of action whatsoever" will not interrupt prescription. Callendar v. Marks, Sup.Ct.1936, 185 La. 948, 952, 171 So. 86, 87. They contend that Argonaut's suit falls within this rule, because Section 33 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 933 contemplates that an employer may sue a third party only where he has paid compensation benefits under an award entered by the deputy commissioner. They would thus have us impute to the assignment provision of Section 33 an exclusory effect, preempting any nonstatutory remedies otherwise available to an employer to recoup from a third party tortfeasor compensation benefits paid under the Act. Louviere argues that, although Section 33 makes the right to sue as a statutory assignee contingent on payment of compensation under an award, it was not designed to supplant parallel, nonstatutory remedies available to the employer and did not bar Argonaut's suit, as the employer's subrogee.

The threshold questions we must consider are whether Section 33 of the Act preempts whatever nonstatutory rights of action an employer might have for compensation payments to an employee, and if not, whether the employer does, in the absence of a statutory bar, have such a right of action in the circumstances

---

2. The district court dismissed Argonaut's independent suit on June 6, 1974. The reason given in the minute entry was that the compensation payments were not made under a formal award.

3. Argonaut's suit also named Movible Offshore as a defendant. Because an employer's liability under the Act is exclusive of all other liability to the employee, Movible should be dismissed from the suit. 33 U.S.C. § 905.

4. Jurisdiction of this action is grounded on 43 U.S.C. § 1333, the Outer Continental Shelf Lands Act, which extends coverage of the Longshoremen's and Harbor Workers' Compensation Act to accidents taking place on

fixed platforms such as the one involved here. 43 U.S.C. § 1333(c). The law applicable to these structures is the federal law of the United States and the law of the adjacent state applied as federal law in the absence of inconsistent federal law. 43 U.S.C. § 1333(a)(2); Rodrigue v. Aetna Casualty & Surety Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360.

5. This provision reads:

"The filing of a suit in a court of competent jurisdiction shall interrupt all prescriptions affecting the cause of action therein sued upon, against all defendants, including minors and interdicts." LSA–R.S. 9:5801.

this case presents, and whether suit to enforce such a right is effective to interrupt prescription of the employee's claim for damages.

## I.

The contention that Section 33 of the Act should be construed as providing the sole remedy of an employer against third persons, preempting other nonstatutory remedies, was addressed and rejected in Federal Marine Terminals, Inc. v. Burnside Shipping Co., 1969, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371. There a longshoreman had been killed by a fall into an unguarded hatch. His widow, after accepting compensation under an award, filed a wrongful death action against the shipowner, Burnside, within six months of the award. Burnside, in turn, filed a separate action in the same federal court seeking indemnification from Marine Terminals, the longshoreman's employer. Marine Terminals, then counterclaimed against Burnside for "all sums which have been paid or will be paid" as compensation benefits, alleging that Burnside, as owner and operator of the vessel, had breached its duty to the stevedore to provide a safe place of work, causing the death which triggered the stevedore's statutory obligation to pay compensation. The district court dismissed the counterclaim and the court of appeals affirmed, both reasoning that the statutory remedy was exclusive and that the employer could not sue except as a statutory assignee.

The Supreme Court reversed. First, it held that Section 33 of the Act is not the exclusive source of an employer's remedies to recoup compensation payments from negligent third parties. The keystone of its analysis was that Section 33 "gave the employer, in return for his absolute liability to the [employee], part of the latter's rights against others" and "the legislative grant of a new right does not ordinarily cut off or preclude other nonstatutory rights in the absence of clear language to that effect." 394 U.S. at 412, 89 S.Ct. at 1149. The Court, looking to the language of the statute

and its legislative history, found nothing to suggest a purpose to limit the employer's remedy against third persons to assignment to the rights of the compensated employee. The Court particularly observed that whereas Congress had explicitly made the employer's absolute liability for compensation exclusive of any tort liability, it attached no such exclusivity to the employer's right to sue third parties as the assignee to the rights of the employee.

Liberty Mutual Insurance Co. v. United States, 2 Cir. 1961, 290 F.2d 257, and Joyner v. F. & B. Enterprises, 1971, 145 U.S.App.D.C. 262, 448 F.2d 1185, on which the appellees rely, are, we conclude, inconsistent with Burnside. Liberty Mutual involved the same longshoreman-stevedore-shipowner triangle that was present in Burnside. The stevedore's compensation carrier paid benefits to the employee under an award. When the employee failed to sue, the employer filed suit against a third party, four months after the award, but only eleven days before his suit would have been barred by the governing statute of limitations. Had he waited the statutory period of six months, to file as a statutory assignee, his claim would have been barred. Chief Judge Lumbard, in dissent, argued that although the employer was not entitled to sue as a statutory assignee until six months after the award, he should be permitted to seek recoupment as an equitable subrogee. His line of reasoning, similar to that of the Court in Burnside, was that the statutory assignment of rights granted by Section 33 conferred an additional remedy on the employer but did not preempt pre-existing nonstatutory remedies. Nevertheless, the majority upheld the dismissal of the employer's suit, finding that, absent statutory assignment, neither the employer nor its subrogated compensation carrier was entitled to initiate an action against an alleged third party tortfeasor.

The Court of Appeals for the District of Columbia reached the same conclusion

in Joyner v. F. & B. Enterprises, 1971, 145 U.S.App.D.C. 262, 448 F.2d 1185. There the defendant in a suit filed by the employee attempted to join the employer, who had paid compensation without an award, as a real party in interest under Rule 17 of the Federal Rules of Civil Procedure. The court upheld the denial of joinder, on the ground that an employer who pays compensation without an award lacks a substantive right to sue a third party for reimbursement of benefits paid. In such circumstances, the court concluded, as had the court in *Liberty Mutual*, that the employer's only right was to reimbursement out of his employee's recovery against third parties—a remedy the courts have found implicit in the statutory scheme, although it is not specifically granted by the statute. See Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; The Etna, 3 Cir. 1943, 138 F.2d 37.

Both decisions appear to impute to Section 33 an exclusory effect. To this extent they are, we conclude, inconsistent with the holding and reasoning of *Burnside*. Both appear to have decided that recognition of an independent, nonstatutory right of action would be inimical to the legislative purpose evidenced by the statutory scheme. *Burnside* apart, we find a general poverty of support for that conclusion.

■ First, courts and commentators have recognized the objective under the Act of "placing the burden ultimately on the company whose default caused the injury." Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732, cited in *Burnside*, 394 U.S. at 420, n. 22, 89 S.Ct. 1144, 22 L.Ed.2d 371. See generally, 2 Larson's Workmen's Compensation Law §§ 71 and 76 (Cum.Supp.1974). Similarly, a recognized purpose of the Act is "to protect employers who are subjected to absolute liability by the Act." Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. at 412, 74 S.Ct. at 206.

Section 33, if exclusive, is manifestly incapable of advancing these related objectives. One commentator has identified nine distinct situations where a holding that the Section 33 remedy is exclusive would "deprive the employer of a valuable prior remedy and present the third party with a gratuitous immunity." 2 Larson's Workmen's Compensation Law § 77 at 250.102–.103 (Cum.Supp. 1974). As that commentator aptly admonishes, "before a statutory remedy is construed to be an implied abolition of all antecedent remedies, it should be shown that the new remedy covers the ground previously dealt with by the old, without substantial lacunae where nothing is put in the place of the remedy abolished." *Id.* at 250.102. Section 33 does not meet this test.

■ The statutory scheme is also designed to assure prompt and certain payment of benefits to the injured employee. To this end, the Act provides:

(a) "Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.

(b) The first installment of compensation shall become due on the fourteenth day after the employer has knowledge of the injury or death . . . ." 33 U.S.C. § 914.

The Act thus directs that compensation shall ordinarily be paid to an injured employee without an award. The manifest purpose is to assure prompt aid to the employee when his need is greatest. See American Stevedores, Inc. v. Porello, 1946, 330 U.S. 446, 455–56, 67 S.Ct. 847, 91 L.Ed. 1011. To predicate the employer's right to sue for indemnity on payment under an award would tend to discourage the prompt and voluntary payment of compensation that the Act contemplates, since the employer would be compelled to controvert his obligation to pay compensation, to force an award and protect his right to pursue a remedy against third parties. Certainly we find no merit in the appellee's suggestion

that by making statutory assignment contingent on payment of compensation under an award, Congress implied disfavor of voluntary payment and intended to deprive an employer who pays compensation voluntarily of his independent remedies against wrong-doing third parties.

■ This limitation on statutory assignment was imposed for a specific and limited purpose. Section 33, as originally enacted, provided that acceptance of compensation worked a complete assignment to the employer of all the employee's rights against third persons. Act of March 4, 1927, ch. 509, 44 Stat. 1424. This right was granted "in aid of the employer", not as a limitation on his right to nonstatutory recoupment. The Etna, 3 Cir. 1943, 138 F.2d 37, 40. But the effect of the assignment was to deprive the employee of any right to sue on his own behalf. His claim was thereby entrusted to his employer, who was entitled to file suit, or to compromise the claim, but whose interest in pursuing it was not always sufficient to make him a satisfactory representative of his employee's interests. In 1938, the Act was amended to make payment of compensation under an award a prerequisite to statutory assignment, with "the apparent purpose . . . to provide payments during the period while the employee is unable to earn, when they are sorely needed, without compelling him to give up his right to sue a third party when he is least fit to make a judgment of election." American Stevedores, Inc. v. Porello, 1946, 330 U.S. 446, 456, 67 S.Ct. 847, 852, 91 L.Ed. 1011. Act of June 25, 1938, ch. 685, § 12, 52 Stat. 1168.

■ The thrust of the amendment was thus to protect the employee against premature and unwitting surrender to his employer of his right to sue on his own behalf. See H.R.Rep.No.1945, 75th Cong., 3d Sess. 9 (1938); S.Rep.No.1988, 75th Cong., 3d Sess. 9 (1938). It at-tempted to do so by preserving the employee's right to sue on his claim. But there is nothing to suggest that the amendment was intended to divest the employer of his right to sue on his own behalf for recoupment from the party at fault. Nothing in that right is prejudicial to the right of the employee to pursue his own remedy. The employer's suit or settlement would in no way bind the employee or prevent him from enforcing his own rights.

■■ In short, we find nothing in the statutory scheme or its legislative history that requires leaving the employer who voluntarily pays compensation without a remedy against culpable third parties. On the contrary, we conclude that such a holding would frustrate the congressional objectives of providing prompt compensation to injured employees and of placing the ultimate burden of loss on the party at fault. We therefore hold that in the circumstances this case presents the employer who pays compensation without an award is not barred by Section 33 from pursuing whatever nonstatutory rights he may have against third party wrongdoers.

## II.

We must also disagree with the district court's apparent conclusion that Argonaut had no right of action for recoupment sufficient to interrupt prescription of Louviere's claim, even in the absence of a statutory bar to assertion of nonstatutory remedies. We conclude that the employer, or as here, his subrogated insurer, is entitled to indemnity from a wrongdoing third party.

■ Louisiana law is determinative of this question of nonstatutory recoupment. That law, no less than the common law, is fundamentally hostile to unjust enrichment. See, e. g., La.Civ.Code Art. 1965 (1870). Louisiana courts have, accordingly, long recognized an action for indemnity, although its codal basis has been a source of some dispute.[6] In-

---

**6.** A number of different theories have, over the years, been advanced by the Louisiana Supreme Court to support an action for in-

demnity in circumstances similar to those present in this case—among them direct action in tort under Article 2315, quasi-contract,

deed, the courts have recognized an independent nonstatutory right of an employer paying workmen's compensation benefits to recoup those payments from a wrongdoing third party. See, e. g., London Guarantee Accident Insurance Co. v. Vicksburg, S. & P. R. Co., 1923, 153 La. 287, 95 So. 771; Foster and Glassell Co. v. Knight Brothers, Inc., 1922, 152 La. 596, 93 So. 913. Although these cases have been disavowed as inconsistent with the statutory scheme of the Louisiana Workmen's Compensation Act, the validity of the principle they embody is not challenged. See Minyard v. Curtis Products, Inc., 1967, 251 La. 624, n. 2, 205 So.2d 422, 430, n. 2.[7] More recently, in a suit for indemnity by a subcontractor against the manufacturer of defective materials, the Louisiana Supreme Court reconsidered the theoretical basis of the action in indemnity. Minyard v. Curtis Products, Inc., 1967, 251 La. 624, 205 So.2d 422. Surveying recent decisions, the Court concluded that the principles proscribing unjust enrichment "were the underlying reasons for the decision of those cases which have allowed recovery under the concept of indemnity" and that later cases have "more properly characterized the action for indemnity as an action or claim in quasi contract for unjust enrichment." 205 So.2d at 431. "Under this general theory of quasi contractual obligations founded upon an unjust enrichment", the Court cited the "corrective or supplementary" civil law remedy of the action

de in rem verso as the proper theory of recovery. The elements of this action, as elaborated by the courts in France, and applied in Minyard are: (1) there must be an enrichment, (2) there must be. an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment, (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment and finally (5) there must be no other remedy at law. 205 So.2d at 432. See Nicholas, Unjustified Enrichment in Civil Law, Part I, 36 Tul.L.Rev. 605, 610 (1962).

 Argonaut's complaint, we conclude, alleged facts sufficient to support relief under this theory; alleging specifically that the fault of the defendants injured the employee whom the plaintiff then became obligated to, and did in fact, compensate. Thus the alleged tortfeasors were enriched at the expense of the employer's subrogated insurer, without legal justification.

### III.

The remaining question is whether the suit filed by Argonaut interrupts prescription of the employee's right of action against the same defendants. We are compelled, by decisions of the Louisiana Supreme Court, to hold that it does. Most directly pertinent is the decision in National Surety Corp. v. Standard Accident Insurance Co., 1965, 247 La. 905, 175 So.2d 263.

---

and legal subrogation. See, for example, Appalachian Corporation v. Brooklyn Cooperage Co., 1922, 151 La. 41, 91 So. 539; Foster & Glassell Co. v. Knight Bros., 1922, 152 La. 596, 93 So. 913; London Guarantee Accident Insurance Co. v. Vicksburg, S. & P. R. Co., 1923, 153 La. 287, 95 So. 771; Marquette Casualty Co. v. Brown, 1958, 235 La. 245, 103 So.2d 269. See generally, Minyard v. Curtis Products, Inc., 1967, 251 La. 624, 205 So.2d 422. But see, Forcum-James Co. v. Duke Transportation Co., 1957, 231 La. 953, 92 So.2d 228.

7. Some of these decisions have come upon hard times as of late. London Guarantee has been overruled to the extent that it permits an unsubrogated insurer to sue for what is in

effect "damage sustained by reason of a contractual obligation." Forcum-James Co. v. Duke Transportation Co., supra, 231 La. at 962, n. 3, 93 So.2d at 231, n. 3. The authority of London Guarantee, as well as of Foster & Glassell was further undermined in Marquette Casualty Company v. Brown, 1958, 235 La. 245, 103 So.2d 269, to the extent that they suggested that a nonstatutory right to recoupment survived the enactment of the parallel statutory right of action. 235 La. 245, n. 3, 103 So.2d at 272, n. 3. Nevertheless, the reasoning of these cases may survive to the extent that it does not run afoul of a specific statutory scheme. See Minyard v. Curtis Products, Inc., 1967, 251 La. 624, n. 2, 205 So.2d 422, 430, n. 2.

There the employer's subrogated insurer had paid benefits to an injured employee pursuant to the Louisiana Workmen's Compensation Act and had subsequently filed a suit against an alleged third party tortfeasor seeking recovery of the amount paid.[8] More than one year after the accident, the employee intervened in the action, seeking damages, and the defendant pleaded prescription. The court held that the prescription running in favor of the tortfeasor was interrupted as to the injured employee by the timely filing of suit by the employer's compensation carrier. The employee's claim, the court concluded, was on the same cause of action, for purposes of LSA–R.S. 9:5801, as the employer's carrier's suit. "Cause of Action", for those purposes, was defined as "an act on the part of a defendant which gives rise to a plaintiff's cause of complaint". 175 So.2d at 266. This analysis, the court held, was unaffected by the fact that the employee's claim had not been included in the original suit and substantially increased the aggregate demand against the defendant. Increased demand, the court noted, does not betoken a new cause of action. The court emphasized that, although the employee had been neither present nor represented in the original action, "all prescriptions affecting the cause of action sued upon are interrupted as to all defendants by the commencement of a civil action in a court of competent jurisdiction." 175 So.2d at 268.

The Louisiana Supreme Court, in a recent decision, has reaffirmed the reasoning and result of National Surety and overruled a court of appeals decision that attempted to narrow its implications. Nini v. Sanford Brothers, Inc., La.1973, 276 So.2d 262, overruling American Surety Insurance Co. v. Insurance Company of North America, La.App. 1969, 220 So.2d 163. The state court of appeals had held that a suit by one insured against another for the deductible portion of its losses did not interrupt prescription to permit a subsequent suit by the plaintiff's subrogated insurer against the defendant's insurer for amounts expended under its policy. National Surety, the court concluded, could not be read as extending the effect of interruption in favor of "all potential plaintiffs." 220 So.2d at 165. Furthermore, the court reasoned, National Surety was distinguishable as the plaintiff there had filed a timely intervention pursuant to specific provisions of the Louisiana Workmen's Compensation statute.

The Supreme Court in Nini found this reasoning inconsistent with National Surety. 276 So.2d at 266, n. 6. It underscored National Surety's emphasis of the rule that "all prescriptions affecting the cause of action therein sued upon are interrupted as to all defendants". 276 So.2d at 266. And it cited National Surety for the broad proposition that the effect of interruption of prescription was to be determined by the effect of the original petition in giving notice to the defendant of a claim arising out of the same cause of action, viz. the same set of operative facts. In broad language, the Court observed that "the essence of interruption of prescription by suit has been notice to the defendant of legal proceedings based on the claim involved" so that prescription is interrupted "[w]hen the defendant knows or should know, prior to the expiration of the prescriptive period, that legal demands are made upon him from the occurrence described in the petition filed". 276 So.2d at 264–65.

In another context we might be loathe to take the broad language of

8. The employer is guaranteed the right to sue on his own behalf by the statute. LSA–R.S. 23:1101. He does not, however, sue as a subrogee whose rights are derivative of those of his employee. The statute is held to grant him an independent right of action against wrongdoing third parties. Marquette Casualty Co. v. Brown, 1958, 235 La. 245, 103 So.2d 269; Board of Commissioners of Port of New Orleans v. City of New Orleans, 1953, 223 La. 199, 65 So.2d 313.

these opinions of the Louisiana Supreme Court at face value.[9] But the analogy of Louisiana Workmen's Compensation Law to the Longshoremen's and Harbor Workers' Compensation Act persuades us that *National Surety* and *Nini* should control the disposition of this appeal. We conclude, accordingly, that suit by the employer's subrogated insurer to recover benefits paid an injured employee under the Longshoremen's and Harbor Workers' Compensation Act will interrupt prescription to permit a subsequent suit by the employee for his damages arising out of the same occurrence. The employer-employee nexus under the Act assures that suit by the employer, or by his subrogated insurer, will necessarily include allegations of injury to its employee, and thereby give clear notice to the defendants of the potential claim of that employee.

We therefore hold that Argonaut's suit was effective to interrupt prescription of Louviere's claim. In so holding, we imply no opinion as to the merits of Louviere's claim or, for that matter, the claim of Argonaut. We reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.

9. A persuasive argument might be made that the holding of *National Surety* should not be extended beyond the special statutory context in which it arose. There was a line of authority to the effect that "[f]rom a single tortious injury to an employee there arises but one cause of action . . . and all damages flowing therefrom, which may include several different and distinct elements, are recoverable in one and the same suit." Board of Commissioners v. City of New Orleans, 1953, 223 La. 199, 65 So.2d 313, 314–15; Marquette Casualty Co. v. Brown, 1958, 235 La. 245, 103 So.2d 269. Indeed, the Court in *National Surety* placed substantial reliance on these cases, while inserting language with broader implications. The narrower view would, it appears, be most consistent with traditional jurisprudence, holding that prescription is interrupted only as to those persons who are parties or privies to the original action. See, e. g., Geisenberger v. Cotton, 1906, 116 La. 651, 40 So. 929; Becnel v.

Waguespack, 1888, 40 La.Ann. 109, 3 So. 536; Flower v. O'Connor, 1841, 17 La. 213; Blanc v. Dupre, 36 La.Ann. 847. Under this view, the general test of interruption of prescription by filing of suit has been not only notice to the defendant of the plaintiff's claim but also of *his intention to assert it.* See Comment, 9 Tul.L.Rev. 285, 286.

Nevertheless, the Court in *Nini* has, to all appearances, rejected this narrower view. There *National Surety* was not treated as a narrow exception carved out of the general rule but as illustrative of the general rule itself. It is notice not of the plaintiff's intention to assert his demand, but of any demand stemming from the same tortious occurrence or conduct, which interrupts prescription as to subsequent demands on that "cause of action," at least to the extent that the first demand sufficiently implies the second. Thus, the narrower view of *National Surety,* whatever its intrinsic merit, is not the current view of the Louisiana Supreme Court.