Terrence PETERS, Plaintiff-Appellee,

v.

**NORTH RIVER INSURANCE COMPANY OF MORRISTOWN, NEW JERSEY and Bergeron Shipyards, Inc., Intervenors-Appellants,**

v.

**SPEEFLO MANUFACTURING CORPORATION, Defendant-Appellee.**

No. 84–3284.

United States Court of Appeals, Fifth Circuit.

June 27, 1985.

Lugenbuhl, Larzelree & Ellfson, Anthony J. Staines, Charles E. Lugenbuhl, New Orleans, La., for intervenors-appellants.

Harry T. Widmann, New Orleans, La., for Terrence Peters.

David K. Persons, Metairie, La., for Speeflo Mfg. Corp.

Before RANDALL, JOHNSON and GARWOOD, Circuit Judges.

RANDALL, Circuit Judge:

This appeal presents the question whether an injured worker covered by the Longshoremen's and Harbor Workers' Compensation Act and a third-party tortfeasor may settle their dispute independently of the employer's subrogation claim for reimbursement of the amount of compensation benefits paid to the worker pursuant to the Act. We hold that, while the worker and the third party may allocate responsibility for reimbursement between themselves, settlement of the worker's claim necessarily settles the employer's subrogation claim and entitles the employer to reimbursement to the extent of the funds that the third party has agreed to pay in settlement. Accordingly, the judgment of the district court is reversed, and the case is remanded with instructions.

## I.

### BACKGROUND

On February 17, 1982, Terrence Peters (Peters) suffered an on-the-job eye injury when a spray gun that he was cleaning escaped his grasp and struck him in the face. At the time of the accident, Peters worked for Bergeron Shipyards, Inc. (Bergeron) at its shipyard in Plaquemines Parish, Louisiana. Following the accident, Bergeron's insurance carrier, North River Insurance Company (North River), voluntarily began, without a formal compensation award, to pay Peters benefits to which he was entitled under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA or the Act), 33 U.S.C. §§ 901 *et seq.* North River ultimately paid approximately $30,000 in medical bills and compensation payments.

Approximately one year after the accident, Peters commenced this diversity lawsuit against Speeflo Manufacturing Corporation (Speeflo), the manufacturer of the spray gun, in which he asserts negligence and product liability claims under Louisiana law. North River and Bergeron[1] intervened and alleged that, to the extent of compensation benefits paid to Peters pursuant to the Act, they are subrogated to his rights against third parties. The com-

---

1. North River, by making compensation payments as Bergeron's insurer, has become subrogated to Bergeron's rights under the LHWCA. *See* 33 U.S.C. § 933(h). Although Bergeron and North River are both parties to this appeal, they have submitted a joint brief and, because of the statutory subrogation, are in exactly the same position. We shall, therefore, for convenience refer to them collectively as "Intervenors."

plaint in intervention alleges that the subrogation claim "take[s] precedence over all of the claims of Terrence Peters" and should be paid first out of any recovery obtained by Peters from Speeflo.

Peters and Speeflo settled their dispute on the day before the scheduled trial date. Intervenors, however, did not participate in the settlement negotiations and did not reach a settlement agreement with either Peters or Speeflo. The settlement agreement between Peters and Speeflo was not written down. The agreement's terms came to light, however, during proceedings on Peters' motion to enforce the settlement. The district court received evidence of the negotiations and found that Peters and Speeflo settled the case on the following terms: "Plaintiff, [Peters,] was to receive $60,000, and in addition defendant, [Speeflo,] was obligated either to settle or litigate the intervenors' claim [for reimbursement of compensation benefits paid to Peters]." 586 F.Supp. at 1391.[2]

Following the settlement, Intervenors moved for recognition that their right to recoup the compensation benefits paid to Peters constitutes a lien that attached automatically as soon as Speeflo and Peters agreed to the compromise. Intervenors did not specify whether the lien should be satisfied from the $60,000 paid to Peters or from funds retained by Speeflo. The thrust of their position was apparently that an agreement between the settlors to allocate responsibility for the compensation lien does not change the rule that the lien attaches to a judgment or settlement fund *automatically* and that the employer or its compensation carrier is entitled to recover the compensation benefits paid without independently proving the liability of the third party against whom the worker has asserted a cause of action.

The district court denied Intervenors' request for recognition of their compensation lien and set the intervention for trial. Intervenors moved for reconsideration of that ruling and, in the alternative, for summary judgment. The district court acknowledged that Intervenor's position would be correct if Peters and Speeflo had settled the case without mentioning the compensation lien. The district court denied the motions, however, on the theory that, because the settlement agreement between Peters and Speeflo expressly does not compromise the reimbursement claim, Intervenors must either themselves settle with Speeflo or must establish their right to reimbursement at trial by "proving the alleged tortfeasor's negligence." 586 F.Supp. at 1395.

The intervention was tried on April 11, 1984. Intervenors persisted in the view that, because of settlement for an amount in excess of the compensation benefits paid to Peters, they were entitled to automatic reimbursement in full without having to prove Speeflo's liability for Peters' injuries. Accordingly, Intervenors simply presented evidence of the amount of compensation benefits that they had paid on account of Peters' injuries and prayed for judgment in that amount against either Peters or Speeflo. The district court, on the other hand, persisted in the view that, because Peters and Speeflo expressly excluded the intervention from the scope of the settlement, Intervenors could not recover unless they established Speeflo's liability for Peters' injuries. Accordingly, the district court dismissed the intervention, and this appeal followed. The only issue on appeal is whether a worker and a third-party tortfeasor may settle their dispute independently of the employer's compensation lien.

## II.

### OVERVIEW OF THE LHWCA

A brief overview of the Act's compensation scheme will place in context the dis-

---

2. The district court's description of the settlement terms is perhaps colored by its ultimate decision on the merits of Intervenors' claim for reimbursement. At the hearing on enforcement of the settlement, Peters' counsel consistently described the settlement terms as follows: "$60,000 [to Peters] with them, [Speeflo,] *taking care of* the worker's compensation intervention." (Emphasis added.) Counsel for Speeflo did not disagree with that statement of the settlement terms.

trict court's decision and the parties' positions. The LHWCA allocates the costs of industrial accidents through a compromise between the rights of employees and employers that is typical of many workers' compensation schemes: an injured worker is entitled to "prompt and certain" compensation benefits from his employer even if the employer is not to blame for the accident, *see Louviere v. Shell Oil Co.*, 509 F.2d 278, 283 (5th Cir.1975), *cert. denied,* 423 U.S. 1078, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976); the benefits, however, are generally less than the worker could recover under traditional tort compensation systems and constitute the employer's exclusive liability for the worker's injuries, *see* 33 U.S.C. § 905(a). To accomplish its "manifest purpose ... to assure prompt aid to the employee when his need is greatest," *Louviere*, 509 F.2d at 283, the Act encourages the voluntary payment of benefits, *see* 33 U.S.C.A. § 914(a), (d), but also provides an administrative procedure for resolving disputed cases, *see id.* § 914(d); 20 C.F.R. pt. 702 (1984).

We have recognized that the compensation scheme of the Act furthers at least two other objectives, both of which are particularly relevant to the issue in this case; (1) "placing the burden ultimately on the company whose default caused the injury," *Louviere*, 509 F.2d at 283 (quoting *Italia Societa v. Oregon Stevedoring Co.,* 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964)), and (2) "protect[ing] employers who are subject to absolute liability by the Act," *id.* (quoting *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 412, 74 S.Ct. 202, 206, 98 L.Ed. 143 (1953)). The Act, as interpreted by the Supreme Court, furthers these objectives by (1) preserving a compensated worker's remedies against third parties; (2) allowing the employer in

certain circumstances to assert the worker's rights against third parties when the worker has failed to do so; (3) denying third parties a right of contribution or indemnity from the employer even when the employer is at fault; (4) allowing the employer to recoup from third-party recoveries the benefits paid to the worker even if the employer is at fault; and (5) preserving the employer's right to assert its own independent cause of action against third parties for recovery of the compensation benefits paid to the worker. Because an understanding of these loss-shifting concepts is essential to proper resolution of this appeal, we shall briefly review them.

### A. *The Worker's Third-Party Cause of Action*

First, we shall examine the worker's third-party cause of action. Section 33(a) of the LHWCA, 33 U.S.C. § 933(a), preserves a compensated worker's right to recover damages from parties other than his employer. The substantive right to recover against third parties is, of course, generally determined by law independent of the LHWCA.[3] The Act does, however, regulate the procedure for asserting the worker's third-party claim and the manner in which the fruits of that claim shall be distributed. If the worker accepts compensation "under an award in a compensation order filed by the deputy commissioner, an administrative law judge, or the [Benefits Review] Board," the Act gives him six months in which to commence an action against a third party who may be responsible for his injuries. *See* 33 U.S.C. § 933(b). If the worker does not commence an action within the six-month period, all of his rights against third parties are automatically assigned to the employer who may during the next ninety days as-

---

**3.** Of course, cases under the Act frequently involve a worker who is a longshoreman, an employer who is a stevedore, and a third party who is a vessel owner. In such cases, the law governing the worker's rights against the third party is federal maritime law. The LHWCA does in this circumstance speak to the substantive rights of the worker against the third party. *See* 33 U.S.C. § 905(b) (limiting worker to a negligence cause of action against vessel; abrogating judicially created (1) warranty of seaworthiness owed by vessel to longshoreman and (2) indemnity owed by stevedore to vessel for breach of warranty of workmanlike performance). In this case, Peters' claim against Speeflo is based on the Louisiana law of negligence and product liability.

sert the worker's rights against third parties. *Id.* During the assignment period, the employer's control of the worker's cause of action is exclusive; the worker is forbidden from commencing a suit on the claim. *See Rodriguez v. Compass Shipping Co., Ltd.,* 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981). If the employer does not act within the ninety-day period, "the right to bring such action shall revert to the person entitled to compensation." 33 U.S.C. § 933(b). If a formal compensation award is not entered, the assignment provision of the Act does not apply, even if the employer has voluntarily made compensation payments, and the right to assert the worker's third-party cause of action remains with the worker. *See Pallas Shipping Agency, Ltd. v. Duris,* 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983). Although the Act and the regulations envision formal compensation awards as a matter of course only in those cases in which there is a dispute between the worker and the employer, an employer may upon request cause entry of a compensation award, though he does not contest his liability under the Act, solely for the purpose of triggering the six-month period and the possibility of a statutory assignment. *See* 20 C.F.R. § 702.315 (1984), *see also Pallas Shipping,* 103 S.Ct. at 1996.

### 1. *Distribution of Recovery when Third-Party Claim is Prosecuted by the Employer*

The Act and its judicial gloss also provide the manner for distributing the recovery, if any, obtained from a third party. If a statutory assignment occurs, the employer is free to file suit and to prosecute the case to judgment or to compromise the claim. *See* 33 U.S.C. § 933(d). The Act expressly provides that, whether funds are recovered by judgment or by settlement, the employer-assignee shall retain from the recovery: (1) its expenses and attorneys' fees; (2) the medical and compensation benefits that the employer has already paid to the worker under the Act; and (3) "the present value of all amounts thereafter payable as compensation ... and the present value of the

cost of all [medical] benefits thereafter to be furnished." *Id.* § 933(e). The employer retains the present value of future compensation benefits "as a trust fund to pay such compensation and the cost of such benefits as they become due." *Id.* § 933(e)(1)(D). The employer must pay what is left, if anything, to the worker. *Id.*

### 2. *Distribution of Recovery when Third-Party Claim is Prosecuted by the Worker*

If, because a statutory assignment has not occurred or because an assigned claim has reverted to the worker, the worker himself prosecutes the third-party claim and obtains a judgment, the LHWCA provides that the employer's liability for compensation under the Act shall be reduced by the worker's net recovery (i.e., "the actual amount recovered less the expenses reasonably incurred ... in respect to such proceedings (including reasonable attorneys' fees)"). Although an employer to whom a worker's claim has been assigned has exclusive control over settlement decisions, *see* 33 U.S.C. § 933(d), the Act does not afford the same degree of control to a worker asserting an unassigned claim. The Act makes no provision for a situation in which the worker desires to settle the claim for *more* than the total compensation owed by the employer; presumably, the worker is free to do so and, under section 33(f), 33 U.S.C. § 933(f), the employer's liability for any unpaid benefits would be extinguished. If, on the other hand, the worker desires to settle the claim for *less* than the total compensation owed by the employer, the worker must obtain the written approval of both the employer and its insurance carrier. *See id.* § 933(g)(1). If such approval is obtained, the net amount of the settlement reduces the employer's liability to the same extent that a judgment would. *Id.* If such approval is not obtained, "all rights to compensation and medical benefits under [the LHWCA] shall be terminated, regardless of whether the employer or the employer's insurer has made payments or acknowledged entitle-

ment to benefits under this chapter." *Id.* § 933(g)(2).

[4] These provisions of the Act only benefit the employer if, at the time the worker obtains a judgment or settlement, the employer has not fully discharged its compensation obligation. The LHWCA does not expressly provide for reimbursement from a judgment or settlement obtained by the worker from a third party of compensation benefits that an employer has already paid. Thus, if the employer has satisfied its entire compensation obligation or if the settlement or judgment exceeds the amount of the obligation still outstanding, the Act itself does not provide the employer with a means of recouping from the worker's recovery the compensation benefits it has already paid. *See Bloomer v. Liberty Mutual Insurance Co.,* 445 U.S. 74, 79, 100 S.Ct. 925, 928, 63 L.Ed.2d 215 (1980) ("the present version [of] the Act ... [does] not make provision for the distribution of amounts recovered from the third party in a suit brought by the longshoreman").

■ The courts, at least since *the Etna,* 138 F.2d 37 (3d Cir.1943), have uniformly held, however, that the employer has a subrogation right to be reimbursed from the worker's net recovery from a third party for the full amount of compensation benefits already paid. *See, e.g., Allen v. Texaco, Inc.,* 510 F.2d 977, 979–80 (5th Cir.1975). Moreover, the employer may intervene in the worker's suit and assert a lien on the worker's recovery to the extent of the compensation benefits it has paid. *Id.* Although Congress has not explicitly recognized the right to reimbursement in the statute, the legislative history of various amendments to the LHWCA makes it clear beyond question that Congress is aware that the courts have recognized a compensation lien on third-party recoveries and, indeed, intends for the lien to "remain[ ] inviolable, consistent with *Bloomer v. Liberty Mutual Insurance Co.,* 445 U.S. 74 [100 S.Ct. 925, 63 L.Ed.2d 215] (1980)." H.R.Rep. No. 1027, 98th Cong., 2d Sess. 36, *reprinted in* 1984 U.S.

Code Cong. & Ad. News 2734, 2771, 2786. *Bloomer* recognizes that the compensation lien attaches to funds obtained by settlement or by judgment. Moreover, the lien recognized in *Bloomer* does not depend upon proof that the third party breached a duty to the *employer* or upon an agreement between the *employer* and the third party to settle a dispute between themselves. Rather, the right to reimbursement attaches to the proceeds of a judgment based upon the third party's breach of duty to the *worker* or to the proceeds of a compromise agreement between the *worker* and the third party, at least where the agreement is silent with respect to the employer's right to reimbursement. *Bloomer* also establishes that the employer is entitled to recoup from a third-party recovery the entire amount of the benefits paid without a reduction for its proportionate share of the litigation expenses and attorneys' fees incurred by the worker. The compensation lien, however, attaches to the worker's net recovery. *See Ochoa v. Employers National Insurance Co.,* 724 F.2d 1171, 1177 (5th Cir.), *vacated,* — U.S. ——, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984), *adhered to on remand,* 754 F.2d 1196 (1985). If the worker's recovery is insufficient to cover both the worker's litigation expenses and the compensation lien, therefore, the litigation expenses must be paid first. *Id.*

Thus, a combination of the express provisions of the Act and the cases construing it establishes that, when the worker recovers from a third party by judgment or compromise, at least where the settlement agreement does not specifically mention the compensation lien, the funds are distributed as follows: (1) the worker retains his litigation expenses and a reasonable attorneys' fee; (2) the employer receives from the recovery a credit for any compensation liability not yet satisfied and reimbursement for compensation already paid; and (3) the worker retains what is left, if anything. *Ochoa,* 724 F.2d at 1177.

B. *The Employer's Third-Party Cause of Action*

In *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 89

S.Ct. 1144, 22 L.Ed.2d 371 (1969), the Supreme Court held that, while the employer's *liability* under the LHWCA is exclusive, the employer's *remedy* of subrogation is not the exclusive means through which it may recover compensation benefits that it has paid to an injured worker. Rather, the Court held, an employer who pays compensation to an injured worker may, notwithstanding section 33 of the Act, 33 U.S.C. § 933, assert whatever causes of action may exist under applicable law against third parties who have, by causing the worker's injuries, triggered the employer's absolute statutory duty to pay compensation. The Court also held that, under federal maritime law, there exists a cause of action in these circumstances by a stevedore for indemnity from a vessel owner when the vessel owner has breached a duty of care owed to the stevedore.

In *Burnside*, the Department of Labor entered a compensation order under which the employer's total liability was approximately $70,000. Within six months of the compensation order, the worker's widow filed a state-law wrongful death action against the owner of the ship upon which her husband had been killed, alleging negligence and unseaworthiness. The shipowner filed a separate action against the employer, seeking *Ryan* [*Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) ] indemnity for any sums it might be required to pay in the wrongful death suit. The employer filed a counterclaim seeking to recover "all sums which have been paid or will be paid as compensation benefits" to the worker's family under the LHWCA. Under the principles discussed in part I(A)(1), *supra*, the employer would have been entitled to recoup its compensation payments from the recovery, if any, obtained in the widow's wrongful death suit. Because the state law governing the widow's suit limited wrongful death recoveries to $30,000 (a sum well below the employer's compensation liability), however, the employer's compensation lien could not have provided full satisfaction. Accordingly, the employer asserted a counterclaim against the third party for indemnity in the amount of its compensation liability. The lower courts dismissed the counterclaim on the ground that the employer's subrogation rights under section 33 of the LHWCA constituted the only means through which the employer could recover the sums paid in compensation.

The Supreme Court disagreed. The Court noted that the Act itself "attache[s] no ... exclusivity to the employer's action against the third person as subrogee to the rights of the employee or his representative." Moreover, the Court found no reason to imply such an exclusivity. The employer's liability under the Act is made exclusive to "counterbalance the imposition of absolute liability; there is no comparable *quid pro quo* in the relationship between the employer and third persons." *Id.* at 413, 89 S.Ct. at 1149. Therefore, the Court held that an employer is free to assert whatever independent causes of action against third parties that may exist under applicable law. *See also Olsen v. Shell Oil Co.*, 708 F.2d 976, 981–82 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984).

The Court found in the case before it an independent cause of action under federal maritime law on behalf of a stevedore who has incurred LHWCA liability at the hands of a negligent shipowner. The cause of action is bottomed on the duty of care owed by a vessel to all who are lawfully on board, including stevedores. The Court held that, if the vessel owner breaches that duty, "the shipowner's liability ... expend[s] to the foreseeable obligations of the stevedoring contractor for compensation payments to ... a longshoreman ... occasioned by the shipowner's breach of his duty to the stevedoring contractor." *Id.* 394 U.S. at 415, 89 S.Ct. at 1150. The Court emphasized that the cause of action is an independent one belonging to the employer, not to the worker: "[the claim] is founded not on [the third party's] wrong to [the worker] but on its independent wrong to [the employer]." *Id.* at 418, 89 S.Ct. at 1152.

With this background, we turn to an analysis of the district court's decision and the contentions on appeal.

## III.

### THE DISTRICT COURT'S OPINION

The fundamental premise of the district court's decision is that, when a worker has been injured by a third party and the employer has paid compensation under the LHWCA, two separate claims against the alleged tortfeasor result: "(1) a claim for reimbursement on behalf of the employer ... and (2) a claim for tortious injuring on behalf of the employee." According to the district court, "[e]ither claim can be settled by the respective claimant at any figure deemed by him to be advantageous, provided the other claim is unaffected thereby." 586 F.Supp. at 1395.

The district court recognized that, if the settlement between Speeflo and Peters had not mentioned the compensation lien, Intervenors would have been automatically entitled to reimbursement without having to prove Speeflo's liability. *See Bloomer*, 445 U.S. at 74, 100 S.Ct. at 925. The court identified several grounds for rejecting that outcome, however, when a settlement agreement expressly excludes the compensation lien from its scope. First, the court noted that the employer's right to reimbursement of compensation benefits exists

to prevent the injured worker from obtaining a double recovery—common law damages from a third party in addition to compensation benefits, which are a statutory substitute for those same common law damages. Because of the terms of this specific settlement agreement, the court found no danger of double recovery in this case: "the money paid by the defendant tortfeasor to the plaintiff employee did not include an amount for benefits already paid by intervenors." 586 F.Supp. at 1392. Second, the district court found that Intervenors' position would effectively give the employer control of the settlement process in derogation of the policy that "settlements are favored in the law." *Id.* at 1393.[4] Finally, the district court concluded that, because the settlement expressly reserved Intervenors' claims against Speeflo, "intervenors have no justifiable complaint that the settlement at issue prejudiced them in any way." *Id.* at 1395. The court reached this conclusion because Intervenors are in "exactly the position" they would have occupied if Peters had chosen not to sue Speeflo: "[I]nstead of a right of intervention in their employee's suit, the sole remedy of the employer and its insurer would have been a direct suit against the third party, with success dependent on proof of negligence of that third party." *Id.* at 1395.

---

**4.** The court illustrated its concern with a hypothetical. Suppose an employer has a $50,000 compensation lien and a worker has suffered injuries for which a jury would likely award damages of $350,000. If judgment is rendered for the worker, the employer will recoup $50,000 and the worker will retain $300,000. If, however, it is determined during settlement negotiations that the worker's chances of recovering from a third party are only twenty percent, the worker will likely be willing to settle for $60,000 (20% of his expected $300,000 recovery) and the third party will likely be willing to settle for no more than $70,000 (20% of his expected liability). In the district court's view, the employer should recognize that there is only a twenty percent chance of recovery, should join the settlement, and should accept $10,000 (20% of its compensation lien). If the employer is willing to do so, the case can be compromised for its true settlement value: the third party will

pay $70,000—$60,000 will go to the worker and $10,000 will go to the employer.

If Intervenors' position is correct, the employer can, however, insist on receiving from the $70,000 settlement the full value of its compensation lien. In the district court's view, this will effectively guarantee that the case will not be settled. The worker will be unwilling to accept $20,000, which is only one-third of the true settlement value of his claim, and the third party will be unwilling to pay any more than $70,000, which is the settlement value of the case from its perspective. Accordingly, the worker will be forced to trial. The district court's solution to this problem is simple. If the employer is unwilling to accept less than the full amount of its compensation lien, the third party and the worker can settle their claims independently and the employer can himself pursue the third party at a trial on the merits.

## IV.

### CONTENTIONS ON APPEAL

Intervenors argue on appeal that, contrary to statements in the district court's opinion, the issue in this case has been resolved in their favor by clear precedent. They claim that at least three courts, including this one, have held that the rule that a compensation lien attaches to settlements as well as judgments does not change simply because the settlors have agreed between themselves that the worker shall retain the face value of the settlement and that the third party shall be responsible for satisfaction of the compensation lien. *See Sexton v. Shell Oil Co.*, no. 75–212 (E.D.La. Nov. 5, 1976), *aff'd without opinion*, 559 F.2d 28 (5th Cir. 1977); *Voison v. O.D.E.C.O. Drilling, Inc.*, 557 F.Supp. 715 (E.D.Tex.1982), *rev'd on other grounds*, 744 F.2d 1174 (5th Cir. 1984); *Davillier v. Cavn Venezuelan Line*, 407 F.Supp. 1234 (E.D.La.1976). Intervenors argue that these decisions are absolutely correct because, contrary to the district court's view, it is established that, in a third-party lawsuit like this one, the employer has, not a substantive right against the third party, but simply an equitable interest in whatever recovery the worker can obtain. Finally, Intervenors argue that the district court's decision allows the worker and a third-party tortfeasor by simple agreement to turn a compensation lien into a "hollow claim." The district court's view would require Intervenors to prove Speeflo's liability to Peters at a time when, because he has already been paid, Peters has no incentive to cooperate in presenting the case and may well have agreed with the third party *not* to cooperate.

Speeflo and Peters in a joint brief attempt to uphold the district court's decision on several grounds. Peters and Speeflo concede that Congress has acquiesced in *Bloomer*'s application of a compensation lien to third-party settlements. They argue, however, that, because *Bloomer* does not involve a partial settlement like the one in this case, it cannot be said that Congress has necessarily adopted Intervenors' posi-

tion that the lien attaches to *any* settlement, without regard to its terms. Moreover, Peters and Speeflo argue that, if Congress intended for the compensation lien to attach to any settlement, it would certainly have said so in the 1984 amendments to the Act which expressly create a lien on *"any* [third-party] settlement ... or judgment" for payments made by the special fund for second injuries or by trust funds created pursuant to collective bargaining agreements. *See* 33 U.S.C. § 933(g)(3), (4). Moreover, they argue that Intervenors' position must be rejected because Congress has in the 1984 amendments to the Act "demonstrated an intent to abolish rights of the employer which impinge upon those of the employee."

Peters and Speeflo also argue that *Davillier* was wrongly decided, principally because it fails to recognize that settlement agreements like the one at issue create no danger of double recovery and that the Supreme Court in *Burnside* implied that, because the employer has an independent right to pursue a third-party tortfeasor, "the employee has a corresponding right to resolve his claim as he sees fit, provided this resolution does not affect the employer's ability to assert its independent right." Finally, Peters and Speeflo echo the district court's views (1) that Intervenors' position would discourage settlements by effectively giving the employer and its insurance carrier a veto power over the worker's decision to compromise and (2) that Intervenors have suffered no prejudice because they are free to pursue their *Burnside* cause of action against Speeflo and may certainly subpoena Peters and whatever other witnesses they choose to present at trial.

## V.

### DISCUSSION

Intervenors correctly assert that *Sexton, Voison,* and *Davillier* support their view that a worker may not settle his third-party cause of action independently of the employer's compensation lien. Clearly, how-

ever, Intervenors overemphasize the precedential weight to which these decisions are entitled. Although judgment in *Sexton* and *Voison* was entered in a manner consistent with Intervenors' position, there is no discussion in either case of the arguments raised here. In *Davillier*, the third party argued broadly that the employer's compensation lien can never attach to the proceeds of a settlement between a worker and a third party because the lien is dependent on a finding that the third party was negligent. The *Davillier* court correctly rejected that argument and, although judgment was again entered in a manner consistent with Intervenors' position, did not extensively address the arguments raised here.

Peters and Speeflo, on the other hand, have not directed our attention to any authority under the LHWCA that adopts their position, and the district court cited no such authority. We note at the outset, however, that the position is not entirely novel; there are state workers' compensation acts under which, although an employer has a subrogation lien, the worker and a third party have been allowed to "settle around" the employer's right to reimbursement. *See generally* 2A A. Larson, *The Law of Workmen's Compensation* § 74.17(g) (1983). In the jurisdictions that follow the approach taken by the district court, the compensation acts have been construed to allow the splitting of the worker's third-party cause of action into two claims for settlement purposes. *See, e.g., St. Paul Fire & Marine Insurance Co. v. Wood,* 242 Ark. 879, 416 S.W.2d 322, 324 (1967). We are convinced, however, by the structure of the LHWCA and prior interpretations of it that, although the employer may have independent rights against third parties wholly apart from its subrogation rights, those subrogation rights do not constitute a claim separate from the worker's third-party cause of action. Because the district court proceeded from the opposite premise, its decision is fundamentally flawed.

As our description in part II, *supra,* of the LHWCA's compensation scheme makes clear, two distinct third-party causes of action may well arise when a worker covered by the Act is injured through the fault of someone other than his employer: (1) the *worker's* cause of action for injury to himself, *see* 33 U.S.C. § 933(a), and (2) the *employer's* independent cause of action for injury to itself, *see Burnside,* 394 U.S. at 418, 89 S.Ct. at 1152. The district court held that the first of these—the worker's third-party cause of action—is, in reality, two distinct causes of action: (1) the *employer's* cause of action for breach of duty to the worker, which presumably exists to the extent of compensation benefits paid by the employer, and (2) the *worker's* cause of action for breach of the same duty, which presumably exists to the extent of any recovery that exceeds the amount of compensation benefits paid to the employer. Because they are distinct claims, the district court concluded that they may be settled separately.

The district court's analysis flies in the face of the structure of the Act and prior interpretations of it. To be sure, the employer has an interest in the worker's cause of action and, in certain circumstances, may itself prosecute the claim. There is nothing in the Act or in the decisions construing the employer's subrogation interest in the worker's third-party recovery, however, to indicate that, in order to allow the employer to recoup compensation payments, Congress intended to split the worker's cause of action into two separate claims. In fact, it is already settled, either by express provisions of the Act or by prior interpretations by which we are bound, that the worker's cause of action should be treated as a single, unitary cause of action for almost every purpose: (1) commencing prosecution of the lawsuit; (2) the availability of defenses to the cause of action; (3) settlement of the cause of action, at least where the employer's interest lies in obtaining a credit for compensation liability that has not yet accrued; (4) distribution of the proceeds of a judgment obtained by the worker from a third party; and (5) payment of the costs incurred in asserting the

cause of action. The narrow exception carved out by the district court—that, for purposes of settling a suit commenced by the worker, when the employer's interest lies in reimbursement of compensation benefits already paid, the cause of action may be split in two—is entirely inconsistent with the rest of the LHWCA's compensation scheme.

■ The "mandatory and unequivocal" language, *Rodriguez*, 451 U.S. at 602, 101 S.Ct. at 1950, of section 33(b) of the Act, 33 U.S.C. § 933(b), leaves little room for doubt: for purposes of prosecuting the claim, the worker's cause of action, although the employer has an interest in the outcome, remains a single, unitary cause of action which, depending on the circumstances, may be asserted by either the worker or the employer, but not by both. Congress, of course, could have, as some state legislatures have done, given the worker and the employer concurrent rights to assert the worker's third-party cause of action or made the assignment of the worker's cause of action to the employer a partial one. *See* 2A A. Larson, *The Law of Workmen's Compensation* §§ 74.13, 75.42 (1983). In fact, some courts have construed the LHWCA in this manner. *See, e.g., Potomac Electric Power Company v. Wynn*, 343 F.2d 295, 298 (D.C.Cir.1964) ("the employer may bring suit against a third party whenever it is evident that the employer-assignee, for whatever reason, does not intend to bring suit"). In *Rodriguez*, however, the Supreme Court rejected that construction of the Act. Rather, the Court held that, prior to the statutory assignment of the worker's cause of action, "exclusive control of the action" remains with the worker; after the statutory assignment, "exclusive control" is vested in the employer. *Rodriguez*, 451 U.S. at 600–01, 101 S.Ct. at 1949. In *Rodriguez*, the Court noted that the statutory assignment contemplates the transfer of "all rights" of the worker. "[T]hese words preclude the possibility that the assignment is only a partial one that does not entirely divest the employee of his right to sue, or that the employee and the employer possess concur-

rent rights to sue in the post-assignment period." *Id.* at 603, 101 S.Ct. at 1950. Moreover, in *Pallas Shipping*, 103 S.Ct. at 1991, the Court held that the statutory assignment does not occur until a formal compensation order has been entered following administrative proceedings. *Id.* at 1996. Until that time, the employer is powerless to assert the worker's cause of action. Congress has, therefore, through the assignment provisions of the Act, demonstrated an intent to accomplish subrogation without splitting the worker's cause of action. The fact that the cause of action cannot be split at its inception, to us, is strong evidence that we should not allow it to be split at the settlement stage.

Moreover, it is also clear that, for purposes of determining what defenses are available to a third-party claim, the worker's cause of action cannot be viewed as two distinct claims. The availability of defenses to a worker's third-party suit "turns most frequently on the underlying issue of the extent to which the subrogee's action is deemed to be derivative from and identified with the employer's cause of action." 2A A. Larson, *The Law of Workmen's Compensation* § 75.10 (1983). When the subrogated employer and the worker are viewed as having a single cause of action, the employer's concurrent negligence is no defense to the assertion of that cause of action. *Id.* The Supreme Court has held under the LHWCA that, when the worker brings the suit, the employer's concurrent negligence is not a defense that is available to the third-party tortfeasor. *See Edmonds v. Compagnie Transatlantique*, 443 U.S. 256, 260, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521 (1979); *see also Samuels v. Empresa Lineas Maritimas Argentinas*, 573 F.2d 884 (5th Cir.1978), *cert. denied*, 443 U.S. 915, 99 S.Ct. 3106, 61 L.Ed.2d 878 (1979). Moreover, in *Albert v. Paulo*, 552 F.2d 1139, 1140 (5th Cir.1977), we held, in circumstances identical to those in this case, that the employer's concurrent negligence will not preclude the employer from asserting its compensation lien on the proceeds of a settlement between the worker

and a third party. The theoretical underpinning of these decisions disappears if the worker's third-party cause of action is, in reality, two distinct claims—one belonging to the worker and the other belonging to the employer.

Our decision in *Haynes v. Rederi A/S Aladdin*, 362 F.2d 345 (5th Cir.1966), *cert. denied*, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557 (1967), which deals with the distribution of the proceeds of a judgment obtained in a third-party suit prosecuted by the worker, provides further support for the view that the worker's cause of action remains a unitary claim, notwithstanding the employer's right to recoup compensation benefits from the recovery, if any. In *Haynes*, the worker brought a third-party claim, and the employer intervened to assert its compensation lien. The worker recovered a judgment of $8,150, which was allocated by the court among various elements of damages, including lost wages, lost earning capacity, pain and suffering, and medical expenses. The plaintiff made the argument, which has been accepted under some state workers' compensation schemes, that the employer's compensation lien should only attach to damages awarded for lost wages, lost earning capacity, and medical expenses. The plaintiff theorized that benefits paid under the LHWCA compensate an injured worker only for lost wages and medical expenses; thus, the argument runs, the employer's right to reimbursement should not extend to the worker's recovery for pain and suffering. In other words, the plaintiff attempted to limit the compensation lien by, in effect, splitting the worker's third-party cause of action, for reimbursement purposes, into two claims: (1) the employer's cause of action for reimbursement, to the extent of its compensation payments, from the recovery for lost wages and medical expenses and (2) the worker's cause of action for pain and suffering and, to the extent that they exceed the compensation payments, lost wages and medical expenses. We emphatically rejected the worker's argument:

> This analysis is so bizarre and unsupportable as to require very little rebuttal.

Suffice it to say that appellant completely misconceives the purpose and function of the Act; the whole theory of the Act, and of similar compensation legislation, is to provide the injured workman with certain and absolute benefits in lieu of *all* common law damages. Thus the payments made by [the employer] were made in place of *all* damages to which appellant otherwise would have been entitled, and not just lost wages or medical expenses. And Section 33 of the Act, 33 U.S.C. Section 933, makes it clear that the compensation insurer shall recover *in full* its payments from the *total* recovery obtained by the injured workman from a third party defendant, regardless of what that recovery replaces or is termed by the court.

*Id.* at 350 (emphasis in original). *Cf. United States v. Lorenzetti*, —— U.S. ——, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984) (same result under Federal Employees' Compensation Act, 5 U.S.C. §§ 8101 *et seq.*). It is apparent, therefore, that we have rejected attempts by employers to defeat the compensation lien by separating judgments obtained from third parties into component parts. We believe that this strongly supports the view that workers should likewise be precluded from defeating the compensation lien by separating the worker's third-party cause of action into two component parts for settlement purposes.

*Bloomer* provides additional support for the view that the worker's third-party cause of action is a single claim in which the worker and the employer share an interest, not two separate claims. As noted, *Bloomer* held that, when a worker prosecutes an unassigned third-party claim, the employer is entitled to recoup its entire compensation lien from a settlement or judgment, without a reduction for its proportionate share of litigation expenses. The decision is based, in part, on the rule expressed in the statute that, when an employer sues on an assigned claim, the employer shall recover *all* of its litigation expenses. Both of these rules support the view that the employer's subrogation inter-

est cannot be viewed as a separate and distinct claim from the worker's third-party cause of action. The costs incurred in asserting the cause of action are not shared, but must be borne by one party. Significantly, Congress has said that that party is the worker, not the employer.

Perhaps the strongest indication that the district court's view is unsound comes from the Act itself. As noted in part II, *supra*, the LHWCA provides, in effect, that a worker who has asserted an unassigned third-party claim cannot settle that claim independently of the worker's right to a credit towards compensation benefits that will accrue in the future. When the worker brings a third-party suit, the Act expressly provides that the employer shall receive a credit, to the extent of the worker's recovery, on benefits that will accrue in the future. The worker forfeits his right to future benefits, however, if he settles the claim without the written consent of his employer and its insurance carrier. In effect, therefore, the Act recognizes that, for purposes of determining the employer's liability for future benefits, the worker's third-party cause of action is not, as viewed by the district court, two separate claims that may be settled independently of one another. If the worker attempts to settle independently, he forfeits his right to future compensation under the Act. Given this statutory authority with respect to future benefits, it would indeed be anomalous, in our view, to consider the worker's third-party cause of action as two separate claims for settlement purposes simply because, at the time of settlement, the employer has already satisfied its compensation obligations.

For all of these reasons, we are convinced that the district court's analysis is unsound. In short, we think that the structure and history of the Act make clear that the worker's third-party cause of action cannot be viewed as two separate claims. Rather, our review of the Act leads us inescapably to the conclusion that the court in *Davillier* correctly determined that the subrogation interest of the employer "is not in the litigation between the plaintiff and the defendant, but only in the end product of the litigation—the plaintiff's recovery." 407 F.Supp. at 1238. Peters and Speeflo argue that *Davillier* was wrong in this regard because it relied on *Joyner v. F & B Enterprises, Inc.*, 448 F.2d 1185 (D.C. Cir.1971). The issue in *Joyner* was whether an employer who has paid LHWCA benefits to an injured worker must be joined as a "real party in interest," *see* Fed.R.Civ.P. 17(a), in a third-party lawsuit brought by the worker. The court concluded that the employer was not a real party in interest. This conclusion was based on the determination that, because a statutory assignment had not occurred, the employer did not have "a substantive right against the third-party tortfeasor"; rather, the employer's "only rights ... run against [the worker] and any recovery he may obtain in his third-party action." *Id.* at 1188.

Peters and Speeflo argue that the *Joyner* court erroneously implied that an employer's subrogation rights under the LHWCA constitute its exclusive remedy against third-party tortfeasors. That implication is, as we recognized in *Louviere*, 509 F.2d at 283, inconsistent with the Supreme Court's holding in *Burnside*. It does not necessarily follow, however, that *Joyner* and *Davillier* mischaracterize the nature of the employer's subrogation rights when a worker has brought suit. Nothing in the Supreme Court's decision in *Burnside* vitiates the conclusion that, when a worker has sued, the employer's reimbursement right is not a substantive right premised on proof by the employer of the third party's liability. *Burnside* simply recognizes that the employer may have other remedies for breach of a duty to itself, rather than to the worker.

As the preceding analysis demonstrates, the district court's conclusion that the worker's third-party cause of action is a distinct claim from the employer's right to reimbursement is simply wrong. The effect of the district court's decision, therefore, is to allow the worker and the third party, by simple agreement, to defeat the compensation lien. The district court justi-

fies the result because, in its view, the employer is not prejudiced thereby and because the double recovery rationale for the compensation lien no longer exists when the third party agrees to pay the compensation lien.

The district court's opinion does not make clear whether, in order to recover their compensation lien, Intervenors will have to prove Speeflo's liability to Peters, as if the cause of action had been statutorily assigned, or whether they will have to prove Speeflo's liability to Intervenors themselves, as if the Intervenors had asserted a *Burnside* cause of action. Clearly, however, it cannot be the former. The Supreme Court made clear in *Pallas Shipping* that an employer has no right to assert the worker's cause of action until a statutory assignment has taken place. If the court intended the latter, its conclusion that the employer is not prejudiced by its construction of the settlement agreement is clearly wrong. A *Burnside* cause of action is an *independent* cause of action based on the third party's independent wrong to the employer. There may well be defenses to such a cause of action, such as the employer's concurrent negligence, that do not exist when the worker has brought suit on his own claim. *See* 2A A. Larson, *The Law of Workmen's Compensation* § 77.11 (Supp.1984). Indeed, the applicable law may not even provide an employer with an indemnity cause of action in these circumstances. Moreover, we reject the argument of Peters and Speeflo that, by recognizing that the Act does not deprive the employer of its independent causes of action, the Supreme Court implied in *Burnside* that the worker and the third party are free by agreement to relegate the employer to those independent causes of action. Absent a settlement agreement like the one in this case, it is undisputed that the employer has an automatic right to reimbursement from the funds obtained by the worker. In the district court's view, that right to reimbursement may be taken away by an agreement between the worker and a third party, as long as they also agree to preserve the employer's funda-

mentally different and substantially more onerous right to assert a *Burnside* cause of action. We cannot believe that the Supreme Court intended such a result by simply recognizing that, if a worker's cause of action is inadequate to provide reimbursement to the employer, the employer may pursue its own independent cause of action against third parties. We think it is manifest, therefore, that the employer is in fact prejudiced by the district court's construction of the settlement agreement in this case.

The district court also concluded that the rationale for the compensation lien—the prevention of a double recovery—does not exist when a settlement like the one in this case is confected. The district court theorized that Peters has not received a double recovery because Speeflo retained funds from the settlement to pay the compensation lien. This theory is based on our decision in *Allen*, 510 F.2d at 977. In *Allen*, the worker sued a third party who was allegedly responsible for his on-the-job injuries. The employer intervened to assert its compensation lien. The worker and the third party reached a settlement agreement in which the third party agreed to pay the worker $15,000 plus "any additional amount which might be owed on the subrogation claim" asserted by the employer. *Id.* at 978. The issue in the case was whether, by waiving its subrogation rights in a contract with the third party, the employer forfeited its right to assert a compensation lien. We held that a compensation lien does not exist without an underlying right of subrogation and that the waiver of subrogation therefore extinguished the compensation lien. In arguing for a contrary result, the employer claimed that prohibiting assertion of its compensation lien would allow the worker to obtain a double recovery. We noted first that, because it waived its right to subrogation, the employer "has no standing to protest the plaintiff's possible double recovery." *Id.* at 982. We also noted that, under the terms of the settlement agreement, there was no possibility of a double recovery:

Allen received $15,000 net, regardless of the disposition of the compensation claim. Texaco agreed to pay in addition the claim [of the employer] if found valid. The nature of the settlement robs the double recovery argument of all vitality.

The district court reasoned that, because the settlement in this case, like the settlement in *Allen,* provides that the third party will pay the compensation claim, there can likewise be no double recovery here. *Allen* must be read, however, in the waiver context in which it arose. We went on to say in *Allen* that "[a]s a practical matter, the waiver of subrogation rights by the compensation insurer permits the third party to achieve the kind of settlement arrived at here and precludes double recovery *to the third party's advantage." Id.* (emphasis added). The clear implication from *Allen,* therefore, is that, absent a waiver of subrogation, the third party and the worker cannot defeat the compensation lien through a settlement agreement like the one in this case. The fact that the third party has agreed to pay the compensation lien, and has presumably reduced accordingly the amount it was willing to pay to the worker in settlement, indicates that it is not necessary, in order to prevent double recovery to the worker, to satisfy the lien from the worker's recovery. It does not necessarily follow, however, that the third party will only be obligated to pay the lien if its liability is established at trial. Indeed, absent a waiver of subrogation, we think that the effect of the settlement terms is simply to transfer the obligation automatically to reimburse the employer from the worker to the third party.[5]

We have concluded that a worker and a third-party tortfeasor may not settle their dispute independently of the employer's compensation lien. The only question remaining in this case is whether the compensation lien should be satisfied from the $60,000 paid by Speeflo to Peters or from funds retained by Speeflo. Counsel for Speeflo conceded at oral argument that, under the terms of the agreement in this case, Speeflo is obligated to pay the compensation lien even if, in the event we reverse the district court's decision, it is determined that Intervenors are entitled to recoup the entire amount of their lien without proving Speeflo's liability.[6] We see no reason why a third-party tortfeasor and a worker cannot agree among themselves that, rather than paying the amount of the lien to the worker, the third party will pay it directly to the employer. Accordingly, on remand, judgment should be entered for Intervenors against Speeflo in the full amount of the compensation benefits that they have paid to Peters on account of the injuries made the basis of this lawsuit.

## VI.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is reversed, and the case is remanded with instructions to enter judgment for Intervenors against Speeflo for the full amount of Intervenors' compensation lien.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

---

**5.** The remaining arguments raised by Speeflo and Peters are easily disposed of. There is nothing in the Act or the legislative history of the 1984 amendments to suggest that, by providing a lien on *"any"* settlements for reimbursement to trust funds and the special fund, Congress intended to distinguish these liens from the lien recognized by the caselaw for reimbursement to employers. The claim that the district court's decision must be affirmed because Congress amended portions of the Act in 1984 to make them more favorable to workers

is equally without merit. Congress in the legislative history of the 1984 amendments expressly reaffirmed its recognition of the employer's compensation lien and its intention that the lien shall "remain[ ] inviolable."

**6.** Counsel stated: "Speeflo acknowledges that under the terms of the settlement it will be Speeflo and not the plaintiff who will have to satisfy the employer's claim, should it come to that."